JEAN DAMIDAUX, Plaintiff

v.

**HESS OIL VIRGIN ISLANDS CORP., and PETTIBONE CORPORATION, Defendants**

**and**

**HESS OIL VIRGIN ISLANDS CORP., Third-Party Plaintiff**

v.

**STANDBY POWER SUPPLIES, INC., Third-Party Defendant**

Civil No. 55/1978

District Court of the Virgin Islands

Div. of St. Croix

April 29, 1981

JEAN-ROBERT ALFRED, ESQ., Christiansted, St. Croix, V.I., *for plaintiffs*

BRITAIN H. BRYANT, ESQ., Christiansted, St. Croix, V.I., *for defendant and third-party plaintiff*

JAMES L. HYMES, ESQ., Charlotte Amalie, St. Thomas, V.I., *for defendant*

DAVID O'BRIEN, ESQ., Christiansted, St. Croix, V.I., *for third-party defendant*

PETERSEN, *Judge*

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the motion of defendant Hess Oil Virgin Islands Corporation (HOVIC) for a judgment notwithstanding the verdict.

Plaintiff Jean Damidaux was injured August 5, 1977, while employed in the operation of a cherrypicker (heavy-equipment crane) owned by HOVIC and operated on HOVIC grounds. Mr. Damidaux was employed by Standby Power Supplies, Inc., at the time as a diesel mechanic, but he was working at HOVIC property and under the direction of HOVIC personnel. Although Mr. Damidaux was a mechanic, not a crane operator, he had been instructed to drive a cherrypicker to pick up a certain pump that needed to be repaired. On his way, and while driving up an incline, the gears of the cherrypicker became jammed between 1st and 2nd gear. Mr. Damidaux climbed down from the machine: it was contested at trial whether he set the emergency brake before he left the machine. He obtained a length of pipe and crawled under the machine in order to strike the gears with the pipe in an attempt to disengage them. When he struck them, both gears became disengaged, and the machine began rolling backwards. Mr. Damidaux claimed that the machine rolled over him without harming him, but while attempting to remount it he was injured by falling in a space between the wheel and the chassis. Defendant HOVIC attempted to show that the machine ran over him while he was lying underneath it.

Plaintiff Damidaux sued HOVIC and Pettibone Corporation, the manufacturer of the cherrypicker, and a trial was held the week of February 9, 1981. The verdict of the jury on February 13, 1981, awarded plaintiff a total damage award of $72,151.25 against HOVIC, but found plaintiff 35% negligent so that the total verdict was $46,885.25. Pettibone Corporation was found not liable.

■■ In a motion for judgment notwithstanding the verdict, the evidence is to be viewed in the light most favorable to the party against whom the motion is made and he should be given the advantage of every fair and reasonable inference. Continental Ore Co. v. Union Carbide and Carbon Corp., 370 U.S. 690, 696 (1962), Fireman's Fund Insurance Co. v. Videfreeze Corp., 540 F.2d 1171, 1178 (3rd Cir. 1976), cert. denied, 429 U.S. 1063. The rule is whether the party against whom the motion is made adduced sufficient evidence to create a jury issue. Fireman's Fund, supra. Basically, the question is whether a reasonable jury could have found for the nonmoving party. See Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: Civil § 2524 (1971).

Defendant HOVIC claims that there was no basis in the evidence on which a reasonable jury could find negligence on the part of HOVIC which caused Damidaux's injuries.

■ However, plaintiff points out correctly at least three possible bases of the jury's finding of negligence on the part of HOVIC. First, the jury could have found negligence on the basis of HOVIC not placing fenders on the machine. The finding that Pettibone Corporation's design of the machine without fenders was not defective does not necessarily preclude a finding that HOVIC, in light of the particular location and manner of the use of their cherrypickers, should have placed fenders on them. There was evidence that fenders could be ordered from the manufacturer. There was a HOVIC manual which mandated the use of fenders on machines of this type and size. The finding that HOVIC was negligent in not following its own rule to place fenders on the cherrypickers, that such fenders have a safety component, and that the lack of a fender was a proximate cause of the injury, would be a permissible one for the jury in this case.

Second, a reasonable jury could have found that Mr. Damidaux was injured because of a malfunctioning emergency brake. Mr. Damidaux testified that he set the emergency brake. While Mr. Piwonka of the HOVIC Saftey Department testified that the brake was down (i.e. flush with the chassis) when he reached the cherrypicker after it had rolled down the hill, there was conflicting evidence as to whether "up" or "down" was the engaged position of the emergency brake on this machine. The Pettibone manual and at least one witness had the brake engaged when down, while several witnesses, including one who had tested the machine recently, stated the opposite. The jury could have found that the emergency brake had been engaged and had failed.

445

■ ■ There was testimony that the emergency brake had not failed before and did not fail after this incident. Mechanics at HOVIC tested the brake the day after the incident and stated that they found no malfunction. Yet if the jury did find that the emergency brake had been engaged and that the machine rolled anyway, it would be a reasonable inference that negligent maintenance of HOVIC was responsible. Plaintiff presented no direct evidence of negligent maintenance of the machine by defendant HOVIC. However, evidence tending to show this would be in the exclusive control of HOVIC. The jury should be permitted to infer negligent maintenance from the failure of the emergency brake. Negligence may be found through inference. See Denneny v. Siegel, 407 F.2d 433 (3rd Cir. 1969), Fuhrman v. Reading Co., 311 F.Supp. 782, aff'd in part, rev'd in part 439 F.2d 10 (E.D. Pa. 1970), Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: Civil § 2528 (1971). While this inference is not an inevitable one, and indeed may be near the outer edge of the bounds of legitimate inference from the evidence, this Court finds that it remains within those bounds. Mere speculation is not involved. The jury might well have found that the emergency brake failed, that this was not a manufacturing defect as there was evidence that this machine had been used before, and that absent some negligence by the party responsible for maintenance of the machine the brake failure would not have happened.

■ Third, in light of this confusion about the emergency brake, the jury could have found that allowing Mr. Damidaux to operate a cherrypicker without his being formally certified as a cherrypicker operator constituted negligence. The jury could have found that Mr. Damidaux's unfamiliarity with the machine caused him to believe that he had engaged the emergency brake when in fact he had not. Thus his lack of training could well be viewed as a proximate cause of the accident.

In granting every possible reasonable inference to the plaintiff and viewing the evidence in the light most favorable to him, this Court finds that the jury permissibly might have followed any of the above three independent lines of reasoning in reaching a verdict for plaintiff against HOVIC.

The second ground of defendant HOVIC's motion for judgment notwithstanding the verdict is that a reasonable fact-finder could not have found that defendant's negligence was greater or equal to plaintiff's. This is a difficult argument to sustain: deciding the percentage allocation of negligence between parties seems peculiarly

446

fitted to the judgment and discretion of the fact-finder. The negligence of parties in the same case may consist of entirely different kinds of actions. Indeed, here negligent maintenance is the basis of defendant's liability, while plaintiff's contributory negligence was possibly based on negligence in operating the machine (not putting down outriggers), in attempting to repair it (with a pipe on an incline), or attempting to remount it (while it was moving). To compare negligence between parties in such a situation is akin to the proverbial comparison of apples and oranges. The comparison must be made, and it is best to term common sense as the guide, since no rule of thumb can be devised. In reality, accidents are not caused 35% by one party, or 65% by another: a party's action is either essential for an accident to have taken place, or inessential. Percentage allocations are rough estimates of blame—and this role belongs to the fact-finder.

There are at least two qualitative differences between the determination of whether a party has been guilty of negligence, and the determination of the percentage of that party's negligence, which call for a more limited review in the percentage allocation. First, a jury may misunderstand the meaning of negligence as a matter of law. Thus, a trial judge's judgment notwithstanding the verdict is not to be interpreted as a decision that these jurors were not reasonable men or women, but rather that they did not act as reasonable jurors would if informed by the law. However, this is not applicable to percentage allocations, which are basically a factual weighing of the blame between parties. To overturn a percentage allocation by jurors is to directly attack their decision from the same level. The judge holds no privileged position as learned in the law in regard to a percentage allocation of negligence. This form of decision-making is as accessible to the average juror as to a judge.

Second, a judge finds that a jury has been mistaken in its determination regarding the negligence of a party on the basis of law. That is, there is a legal standard of negligence which the judge may find has not been fulfilled. There is a line, albeit not a bright one, which the jury has transgressed. If as a matter of law no evidence of negligence has been presented, then it is the duty of a trial judge to overturn a jury finding of negligence. However, where the jury has properly found negligence by two parties, and the percentage of the negligence of each must be determined, the factual balancing and estimation involved in this decision make legal oversight much more problematic.

447

In this situation, the Court is especially reluctant to replace the judgment of the jury with its own. However, a complete lack of oversight would allow an improper exercise of the jury's function to go unreviewed. Accordingly, this Court finds that reversal should be limited to situations where there is an indication that the jury's allocation has been improperly motivated. That is, where the evidence would tend to show that party A's negligence was significantly greater than party B's, but the jury reverses the percentages, if the Court is satisfied that it would be impossible for a jury acting reasonably and without prejudice to reach this allocation, then a new trial on the percentage of negligence may be in order. Short of this rare situation, though, percentage determinations of fault by the jury should not be disturbed: the trial judge should not substitute his own factual judgments for those of the fact-finder.

The comparative negligence jurisdictions which have addressed this question are in accord that a limited review of fault percentage jury determination is appropriate. See H. Woods Comparative Fault at 408 (1978). The standard used by the Vermont Supreme Court is that a jury allocation in favor of plaintiff will stand unless "the verdict was unreasonable or was a product of misconduct by the jury or was influenced improperly by passion or prejudice." Shea v. Peter Glenn Shops Inc., 318 A.2d 177, 178, 132 Vt. 317 (1974). The Wisconsin courts, who have often dealt with this issue, have formulated three bases upon which the jury's allocation in favor of plaintiff can be set aside:

(1) if the apportionment is grossly disproportionate in light of the evidence;
(2) if as a matter of law the plaintiff's negligence equalled or exceeded that of the defendant;
(3) if there was such a complete failure of proof that the verdict could only be based on speculation.

Gross v. Midwest Speedways, Inc., 260 N.W.2d 36, 39 n.13, 81 Wis. 2d 129 (1977), citing Britton v. Hoyt, 218 N.W.2d 274, 63 Wis. 2d 688 (1974), Jagmin v. Simonds Abrasive Co., 211 N.W.2d 810, 61 Wis. 2d 60 (1973).

However, the Wisconsin rule remains one of limited review. Wisconsin courts will sustain the apportionment findings of the jury if they are supported by any credible evidence under any reasonable view. Such apportionment questions are peculiarly within the province of the jury, and only in an unusual case will the court upset the jury's apportionment. This is particularly true where the negligence

of each party is not of the same kind and character. Williams v. Milwaukee and Suburban Transport Corp., 155 N.W.2d 100, 103, 37 Wis. 2d 402 (1967).

■ It has been noted above in this opinion that the jury should be given wider latitude in the apportionment question than, for example, in the initial decision as to negligence: there are simply fewer legal guideposts. In light of the peculiarly factual nature of the question, this Court chooses to articulate a different standard from either Vermont or Wisconsin by which to decide whether to overturn a jury's allocation of percentage of fault. This standard may be a slightly stricter one, though in practice the difference likely would be minimal. The standard is: if negligence of a party is correctly found, then the percentage allocation of the jury between or among parties will not be disturbed absent such an erratic verdict that improper motivation or prejudice is clearly indicated. In accord with the Wisconsin courts, reluctance to overturn the verdict is especially indicated where the negligence of the parties is of a different kind.

However, by any of the mentioned standards it is not appropriate to overturn the jury allocation of 35% negligence to plaintiff Damidaux and 65% to defendant HOVIC in this case. Three aspects of purported negligence of plaintiff are noted by defendant HOVIC: (a) that Damidaux did not put down the outriggers of the cherrypicker when he stopped the machine on the incline; (b) that Damidaux crawled under the machine; (c) that Damidaux attempted to mount the moving machine. However, the jury might well have found actions (a) and (c) not to be negligent. There was testimony that outriggers are used to steady the cherrypickers when the crane arm is in use, and are not generally used as a brake on a hill. There was also testimony by Damidaux that he attempted to mount the machine in order to protect travelers on the cross-road below from the machine, and those in the general area from a possible serious accident if the cherrypicker damaged one of the oil-carrying pipes which paralleled the road. Thus, it may have been that the jury weighed Damidaux's negligence in crawling under the machine and striking the gears with a pipe, against one or more of the three forms of possible negligence by HOVIC. The resultant allocation of fault was not unreasonable.

The last argument of HOVIC is that the information in the jury verdict that plaintiff would not recover if his negligence were 51 percent or greater was wholly unnecessary, prejudicial, skewed the

jury's verdict, and was the reason why the jury did not find plaintiff's negligence to be greater than defendant's.

This information was placed in the jury verdict form for one reason: this Court finds it necessary to carry out the instructions of 5 V.I.C. § 1451. That statute mandates the verdict procedure in a tort action based on negligence. Section 1451(a) notes that if plaintiff is found to be more at fault than defendant, or with multiple defendants, more at fault than the combined fault of defendants, plaintiff cannot recover. Section 1451(c) states:

> The trier of fact shall report by general verdict the total damages, in dollars and cents, not reduced by any contributory negligence of plaintiff, and if plaintiff is found to be contributorily negligent, shall also report the amount to which the damages are reduced by reason thereof, in dollars and cents, in which case the lesser monetary amount shall be the final verdict in the case.

These two sections would produce an inconsistent jury verdict where plaintiff was 51% or greater at fault, unless the jury were instructed not to award damages against a negligent defendant in this situation. This was done in the jury verdict form in this case, in the way in which the least possible prejudice could arise, this Court believes. The jury was asked to calculate the percentage of plaintiff's contributory fault in question 4 of the verdict form. Only in question 7 of the verdict form was the jury instructed not to enter any award against HOVIC if plaintiff's fault was 51% or greater. The position of the question pertaining to the percentage of Damidaux's fault (i.e. prior to the question in which the jury was instructed as to the significance of the percentage allocation) was meant to minimize any possibility that the jury would be influenced by the knowledge of the "51% bar" in allocating Damidaux's contributory fault.

■ Rather than "wholly unnecessary", the inclusion of the information that Damidaux would not recover from HOVIC if his fault was 51% or greater was necessary to fulfill the instructions of 5 V.I.C. § 1451 and to guarantee that the verdict was consistent with that statute.

## ORDER

For the reasons stated in the memorandum opinion of even date,

It is hereby ORDERED

That the motion of defendant Hess Oil Virgin Islands Corporation for judgment notwithstanding the verdict be, and the same hereby is, DENIED.