COVINGTON, Judge.
This is a suit for damages brought by Vernon L. Lewis against Exxon Corporation (Exxon) and Robert D. Litt, a section supervisor for Exxon[1]. The worker’s compensation insurer, Associated Indemnity Corporation, intervened for recovery of the compensation benefits paid to the plaintiff.' *26 Exxon brought a third party action against H.E. Wiese, Inc. (Wiese) and its insurer, Aetna Insurance Company, based on an indemnity clause in its contract with Wiese, and a third party action against Tyler Pipe Industries, Inc. (Tyler) and its insurer, Hartford Accident & Indemnity Company. The trial court dismissed the plaintiffs claim on the grounds that the plaintiff was a statutory employee of Exxon and a co-employee of Litt. The trial court also dismissed the third party claim by Exxon against Tyler and its insurer, and Wiese and its insurer. Further, the court dismissed the intervention of Associated Indemnity Company, plaintiff’s worker’s compensation carrier. This Court affirmed, 441 So.2d 192, the trial court’s decision, and the plaintiff obtained writs from the Louisiana Supreme Court, which reversed both lower courts on the issue that plaintiff was a statutory employee of Exxon Corporation, and remanded the case to this Court for a determination of the liability of the defendants and the quantum due to the plaintiff, in the event of liability.
The facts in this case are not in serious dispute and have been stated in our previous decision.[2]
An accident happened on March 10,1977, at the Exxon chemical plant in East Baton Rouge Parish. Lewis was employed as a pipefitter/welder by Wiese, which had entered into a contract with Exxon to convert an existing ethanol unit to production of isopropanol. While Lewis was welding a 'flange on a gas line, in order to install a metering device, a seal plug, which had been inserted in the line to isolate a section thereof, blew out, causing severe injuries to plaintiff’s left arm and shoulder.
The line involved was one carrying gas from the Exxon refinery for use in the chemical plant. For internal accounting purposes, the refinery would bill the chemical plant for gas supplied. Since all of the gas was not used, Exxon needed to measure the gas so that an accounting could be made. The job that plaintiff (and the Wiese crew) was working on at the time of the accident was installing a metering device on the line for this purpose. Prior to the accident a “hot-work permit” had been issued by defendant Litt certifying that the area in which Lewis was to weld was safe for that purpose, a test having been conducted to check for combustible gases and the line having been purged by nitrogen.
Shortly before the accident, a portion of the gas line had been cut out after purging and testing the line. The work area was then isolated, by using a heavy seal plug. The plug was inserted just before plaintiff’s welding of the flange. As plaintiff commenced the welding, the,plug blew out, causing the injuries to plaintiff.
Lewis bases his claim for damages upon Exxon's negligence and/or strict liability as the owner and custodian of the pipe on which he was working. The criteria for determining Exxon’s duty and the risk to Lewis, and ultimately its liability, was set out in Kent v. Gulf States Utilities Company, 418 So.2d 493, 497 (La.1982), as follows:
In a typical negligence case against the owner of a thing (such as a tree) which is actively involved in the causation of injury, the claimant must prove that something about the thing created an unreasonable risk of injury that resulted in the damage, that the owner knew or should have known of that risk, and that the owner nevertheless failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing. Under traditional negligence concepts, the knowledge (actual or constructive) gives rise to the duty to take reasonable steps to protect against injurious consequences resulting from the risk, and no responsibility is placed on the owner who acted reasonably but nevertheless failed to discover that the thing presented an unreasonable risk of harm.
In a strict liability case against the same owner, the claimant is relieved only of proving that the owner knew or should have known of the risk involved.
*27 The evidence in this case discloses that Exxon exercised exclusive control over all engineering, safety and operational decisions related to the work performed by Wiese and its employees. Exxon’s engineers made all decisions concerning procedures used on this project. The testimony of Exxon’s employees indicates that Exxon personnel supervised all work, conducted the tests necessary to determine the presence of gases in the pipeline and issued the “hot work permit” only after all safety procedures had purportedly been followed, and Exxon concluded it was safe for Lewis to weld the flanges onto the pipe.
These procedures included inspection of the pipe by Litt, purging the line of hydrocarbons by the injection of nitrogen into the line, inserting the seal plug in the pipe to isolate any remaining hydrocarbons after the purge, and testing the area in front of the seal plug to determine the presence or absence of combustible material in that part of the pipe. All of the procedures were performed by Exxon employees before the “hot work permit” was issued and the work by Lewis was begun. Even if Exxon followed their so-called normal procedures in determining that the pipe was “safe” to work on, it is evident that the procedures employed were faulty. The purging of the pipe took place about twenty hours before the cold cutting of the pipe. This lapse of time allowed gases leaking from the valve to reenter the pipe. After the cold-cut section of the pipe was removed, air entered the pipe and mixed with hydrocarbons, forming a combustible mixture. Then the seal plug was inserted in order to isolate the section of the pipe to be welded and contain any gases in the pipe behind the seal plug. After the accident Exxon tested the line for hydrocarbons and found that the pipe contained 3% ethane, 28% propylene, 63% propane, 2% isopropy-lether, 1% isopropylalcohol and 3% hydrogen.
The traditional test of negligence in cases of this type requires the plaintiff prove that the thing within the defendant’s custody and control created an unreason-able risk of injury which resulted in injury and damages. In addition, the plaintiff must prove that the defendant knew or should have known of that risk, and that the owner, nevertheless failed to render the thing safe or to take reasonable steps to prevent the injury caused by the thing. This knowledge, whether actual or constructive, gives rise to the duty to take reasonable steps to protect against injurious consequences resulting from the risk, and so, responsibility is not placed on the owner who acted reasonably, but, nevertheless, failed to discover that the thing presented an unreasonable risk of harm. Buchanan v. Tangipahoa Parish Police Jury, 426 So.2d 720 (La.App. 1st Cir.1983).
To apply this test to the facts of this case we have reviewed the testimony concerning Exxon’s knowledge of the risk and the steps it took to avoid an accident. There is no doubt that Exxon owed a duty to take steps to protect against an unreasonable risk of harm to the plaintiff. We find that Exxon failed to take those reasonable steps to protect him, and thus violated this duty.
The duty owed by Exxon to protect Lewis against an unreasonable risk of harm is based upon Exxon’s custody and control of the thing which resulted in injury to Lewis and the defendant’s knowledge of the potential risk of harm or injury. The knowledge, whether actual or constructive, that the pipe might contain a combustible mixture gives rise to Exxon’s liability. In this case the evidence shows actual knowledge by Exxon of the potential danger; and, hence the creation of an unreasonable risk of harm to Lewis. Exxon attempted to free the pipe of hydrocarbons by purging it with nitrogen twenty hours before the accident. Further, the seal plug was used because Exxon knew that the pipe contained hydrocarbons and it was necessary to isolate that section of the pipe. To block that section of the pipe, Exxon used a device, the seal plug, not intended by its design and manufacture to be used for that purpose. In short, by failing to take the above described reasonable steps to protect Lewis from the risk of *28 injury from an explosion and expulsion of the seal plug, Exxon was negligent. The above described evidence also shows that Litt, whose responsibility it was to see that the foregoing duties were performed properly, was also negligent.
Exxon contends that Wiese and Lewis were negligent and that their negligence caused the accident. Particularly, Exxon contends that the seal plug supplied by Wiese was of faulty design in that it was not exactly round and its wing nut and valve stem were bent so that the distance between either the base plate of the plug or the wing nut and valve stem was so slight that an electrical spark could jump from the plug to the pipe if the plug was touched with the welding rod. Lewis denied touching the plug. An experiment conducted by Exxon’s engineers after the accident failed to produce such a spark. The voltage from the welding machine was insufficient to arc the gap between the plug and the pipe. Exxon’s engineers failed to produce a source of ignition from the welding rod as Lewis is alleged to have done. • Since there is no other theory of negligence ascribed to Lewis’ conduct, we find Lewis free of contributory negligence. The evidence fails to show that the plug was of faulty design (if used for appropriate purposes). We find Exxon and Litt negligent; we find no negligence on the part of Wiese or Lewis.

Quantum.

The force of the explosion which expelled the seal plug from the pipe threw Lewis against the scaffolding on which he was working and caused serious injury to Lewis’ left arm and shoulder. He suffered a compound fracture of the left humerus which failed to heal and caused extensive soft tissue damage. After several weeks, a bone graft was surgically inserted with a metal plate in order to close the fracture. The injury resulted in the permanent loss of strength and motion in his left arm and hand. He is left-handed; and, as a consequence of his injury, is unable to resume his trade or occupation as a welder/pipefit-ter. There was some evidence concerning the possibility that plaintiff might be able to do some other type of work. However, the preponderant evidence indicates that Lewis’ lack of range of motion and lack of strength in his left arm and hand will severely limit his opportunity for employment. Accordingly, we find him to be permanently disabled, and compute his loss by using a projection of his past wages. From the evidence on this question, we conclude that his lost wages, based on an annual income of $17,000, using an inflation factor of 5.8%, for three years and three months (from date of accident to date of trial) amounts to $59,000. We fix Lewis’ future lost wages at $118,000, based on a work-life expectancy of 8V2 years and using an inflation factor of 5.8% and a discount rate of 7%. We award these amounts to Lewis. We further award the plaintiff $80,000.00 for past and future pain and suffering, and medical and hospital expenses in the amount of $7,601,16.
Associated Indemnity Company intervened as Wiese’s workers’ compensation insurer to recover the amounts paid to plaintiff as compensation and as medical expenses. It is entitled to judgment in its favor for such amounts.
Exxon brought a third party action against Tyler, alleging faulty design of the seal plug. Tyler’s witness testified that the plug used by Exxon was not designed to contain gas under pressure and had not been marketed as such. This testimony is not refuted. We' find no error in the trial court’s judgment on this issue, and it is affirmed.
The last issue raised by Exxon concerns the indemnity agreement contained in Wiese’s contract with Exxon. We quote here the provision in question:
Contractor shall defend, indemnify, and save Owner, its officers, employees, agents and representatives harmless from all claims for injuries to or death of any and all persons, including without limitation, employees, agents and representatives of Contractor or its subcontractors, arising out of or in connection with or by reason of work done by Con *29 tractor, its employees, agents, representatives, or subcontractors under this contract, expressly excepting claims for injuries or death caused by the sole negligence of Owner, its officers, employees, agents and representatives.
The evidence shows that the injuries to Lewis were caused solely by the negligence of Exxon and its employee. Thus, Exxon is not entitled to recover from Wiese under the indemnity agreement.
For the above reasons, the judgment of the trial court is now set aside and judgment is rendered herein in favor of the plaintiff, Vernon Lewis, in the sum of $257,000.00, plus interest, against the defendants, Exxon Corporation and Robert D. Litt, in solido. There is further judgment herein in favor of plaintiff, Vernon Lewis, in the sum of $7,601.16, plus interest, for special damages, against said defendants.
It is further ordered, adjudged and decreed, that there be judgment herein in favor of Associated Indemnity Company, intervenor herein, and against Exxon Corporation and Robert D. Litt, in solido, in the full amount Associated Indemnity Company has actually paid, or will actually pay prior to the date of the satisfaction of this judgment, to or in behalf of Vernon Lewis as weekly workers’ compensation benefits and medical expenses, plus interest on the amount of each payment of benefit which was or will be made by intervenor from the date of each payment until payment of the amounts awarded in this judgment, the sum to be paid to Associated Indemnity Company to be paid by preference and priority out of the award made herein to plaintiff, Vernon Lewis.
All costs to be paid by defendants, Exxon and Litt.
RENDERED.

. Safety Main Stopper Co., Inc. was made a defendant by a supplemental and amending petition of plaintiff as well as being made a third party defendant by Exxon, Litt and Associated Indemnity Company. It was dismissed on a motion for summary judgment. Tyler Pipe Industries, Inc. and its insurer, Hartford Accident & Indemnity Company, were also made defendants through a supplemental petition by plaintiff.

. 417 So.2d 1292 (La.App. 1st Cir.1982)