THOMAS BROWN and KATHY BROWN, Plaintiffs

v.

McBRO PLANNING AND DEVELOPMENT COMPANY,
McCARTHY BROTHERS CONSTRUCTION COMPANY, and
FREEMAN–WHITE ASSOCIATES, INC., Defendants

Civil No. 1984/347

District Court of the Virgin Islands

Div. of St. Thomas and St. John

May 5, 1987

ROBERT L. KING, ESQ., St. Thomas, V.I., *for plaintiffs*

JAMES L. HYMES, III, ESQ., St. Thomas, V.I., *for defendants McBro Planning and Development Co. and McCarthy Brothers Construction Co.*

GEORGE H. HUBSCHMAN, ESQ., St. Thomas, V.I., *for defendant Freeman-White Associates, Inc.*

BROTMAN, *District Judge*

## OPINION

On or about February 4, 1980, the Government of the Virgin Islands entered into contracts with McBro Planning and Development Company ("McBro") and Freeman-White Associates, Inc. ("Freeman"), for the construction of the St. Thomas Hospital. Under the terms of the contracts, McBro, acting as construction manager, and Freeman, as architects, undertook to draw all plans and specifications for the hospital. Freeman was also required to periodically inspect the work. In May 1980, defendant McCarthy Brothers Construction ("McCarthy"), of which McBro is a division, became the general contractor for construction. The Department of Health took possession and occupancy of the hospital in November 1982.

On June 4, 1984, plaintiff Thomas Brown, an emergency room technician, slipped and fell in the emergency room area of the hospital. There had been a heavy rain and the emergency room and ramp areas became flooded. Mr. Brown fractured his right patella. The fracture was treated, but Brown was later diagnosed as having a tear of the medial meniscus, which was surgically removed. Brown has recently been diagnosed as having traumatic arthritis.

Plaintiff brought this personal injury action against defendants McBro, McCarthy, and Freeman alleging that his fall was caused by improper construction of the floor in the emergency room area. Brown claims that the floor to the emergency ramp area was improperly sloped inward, toward the interior of the building. The inward slope caused or a minimum exacerbated the condition of flooding of the emergency room and inner areas of the hospital. Brown's wife, Kathy Brown, brought a claim for loss of consortium.

A trial took place in November 1986. The defendant argued motions for directed verdict, both at the conclusion of plaintiffs' case and at the conclusion of the presentation of all evidence. The court granted defendants' motion for directed verdict regarding plaintiffs' claim for punitive damages but denied the remaining motions. (Opinion read into the record on November 7, 1986.) The court reserved opinion on the motion for directed verdict made at the close of the case.

The jury made the following findings in the form of a special verdict. McBro, McCarthy and Freeman were all negligent and their negligence proximately caused plaintiff's injuries and damages. Thomas Brown, however, was not negligent. Regarding damages, the jury awarded Thomas Brown one million dollars ($1,000,000.00) and his wife, Kathy Brown, one hundred and fifty thousand dollars ($150,000.00). The jury found that McBro and McCarthy were each forty percent liable, and that Freeman was twenty percent liable.

Following the jury's verdict, defendants moved for judgment notwithstanding the verdict pursuant to Fed. R. Civ. P. 50(b). Presently before the court are motions by defendants McBro, McCarthy, and Freeman for judgment n.o.v., or in the alternative, for a new trial and/or remittitur.

For the reasons set forth below, the court will deny defendants' motions for judgment n.o.v. The court will grant defendants' motions for a remittitur. If the plaintiffs refuse to accept the proposed damages, the court will order a new trial solely on the

issue of damages. The court will not disturb the jury's decision that all defendants were negligent.

## DISCUSSION

### I. *Motion for Judgment N.O.V.*

■ The Third Circuit has held that,

> In considerating a motion for a judgment notwithstanding the verdict, a court uses the same standard applied in considering a motion for a directed verdict. See Neville Chem. Co. v. Union Carbide Corp., 422 F.2d 1205, 1210 n.5 (3d Cir.), cert. denied, 400 U.S. 826 (1970). The district court must determine whether, as a matter of law, the record contains the "minimum quantum of evidence from which a jury might reasonably afford relief." Denney v. Siegel, 407 F.2d 433, 439 (3d Cir. 1969).

Smollett v. Skayting Dev. Corp., 793 F.2d 547, 548 (3d Cir. 1986). In applying this test, the trial judge in his review of the evidence, "must expose the evidence to the strongest light favorable to the party against whom the motion is made and give him the advantage of every fair and reasonable inference . . . . A trial judge . . . must confine himself to ascertaining whether the party against whom the motion is made adduced sufficient evidence to create a jury issue." Fireman's Fund Ins. Co. v. Vide Freeze Corp., 540 F.2d 1171, 1178 (3d Cir. 1976), cert. denied, 429 U.S. 1053 (1977). The court must decide whether, giving the plaintiff every fair and reasonable inference, there was sufficient evidence from which the jury could reasonably find for the plaintiff. Laskaris v. Thornburgh, 733 F.2d 260, 264 (3rd Cir.), cert. denied, 469 U.S. 886 (1984). "A court cannot weigh the evidence or judge its credibility. If there is conflicting evidence that could reasonably lead to inconsistent inferences, a verdict may not be directed." Id. The same applies to a judgment n.o.v.

McBro and McCarthy base their motion on four grounds: 1) that the court erred in not submitting to the jury their instructions numbered one and two; 2) that as a matter of law they were relieved of any liability as a result of the Government of the Virgin Islands assuming full responsibility and control of the hospital; 3) that as McBro is a division of McCarthy, they are in reality only one entity; and 4) that the damages awarded by the jury were so grossly excessive that they cannot be sustained. Defendant Freeman argues

that a judgment n.o.v. is proper because it cannot be found negligent as a matter of law.

A. *Motion of Defendants McBro and McCarthy for J.N.O.V.*

The first issue the court must address is whether the failure of the Government of the Virgin Islands, through its Department of Health, to act to correct the construction problem from the time it took occupancy of the hospital for a period of almost twenty months, was a superseding cause that relieved the defendants of any liability. Defendants suggest that there are two possible errors on this point. First, the court erred in not holding as a matter of law that the Government, by accepting full responsibility and control of the hospital, was a superseding cause of the injury. Such a decision would mandate a judgment n.o.v. in favor of McBro and McCarthy. Alternatively, defendants argue, the court should have found that the question of superseding liability was a question of fact that should have been presented to the jury. McBro and McCarthy's proposed jury dispurtinstructions numbers one and two would have presented those questions to the jury.

 The court finds that it is not error for it to decide as a matter of law that the Government was not a superseding cause of the injury. The issue of superseding negligence and shifting responsibility, while often a question for the jury, may be decided as a matter of law "where the parties do not dispute the critical facts and only their legal effect remain in issue." Mueller v. Jeffrey Mfg. Co., 494 F. Supp. 275, 277 (E.D. Pa. 1980); see Prince v. Leesona Corp., Inc., 720 F.2d 1166, 1169 (10th Cir. 1983).

In this case, the facts as to the Government taking possession of the hospital and the conditions it imposed on defendants upon accepting possession (e.g., the punchlist of items that remained to be completed by defendants) are not in dispute.

Defendants, in their argument, rely primarily on the Restatement (Second) of Torts § 452, which states as follows:

> § 452. Third Person's Failure to Prevent Harm
> (1) Except as stated in Subsection (2), the failure of a third person to act to prevent harm to another threatened by the actor's negligent conduct is not a superseding cause of such harm.

(2) Where, because of lapse of time or otherwise, the duty to prevent harm to another threatened by the actor's negligent conduct is found to have shifted from the actor to a third person, the failure of the third person to prevent such harm is a superseding cause.

In the ordinary case, "the failure of the third person to act to prevent harm to the other threatened by the original actor's negligent conduct, is not a superseding cause of such harm, and so does not relieve the actor of liability for the harm which he has in fact caused." Id. comment b. It is only "the exceptional cases in which all responsibility has been shifted to the third person." Id. The typical case in which the exception stated in section (2) applies to shift liability is when there is an express agreement (e.g., by contract, by gratuitous promise) between the actor and the third party that the latter will assume all liability. See id. comment e.

When, as in the case at bar, no express agreement exists transferring liability, the court may still find that all duty and responsibility for the prevention of the harm has passed to the third person. The Restatement lists some relevant factors a court might consider in making this determination. Among them are "the degree of danger and the magnitude of the risk of harm, the character and position of the third person who is to take the responsibility, his knowledge of the danger and the likelihood that he will or will not exercise proper care, his relation to the plaintiff or to the defendant, the lapse of time, and perhaps other considerations." Restatement (Second) Torts § 452, comment f.

The testimony of Mr. Brisson discloses, as do plaintiffs' exhibits 6 and 7, that the Department of Health first obtained notice of the defective slab in the emergency ambulance entrance in August 1982, after near completion of the hospital. Deposition of Murray Brisson at 10 and 14. Further, correspondence from Commissioner Schneider of the Department of Health, conditions acceptance of the hospital upon correction of, among other items, the flooding problem in the ambulance area. See Plaintiffs' Exhibit 25. The improperly slanted slab remained on the "punchlist" of items in the hospital that still needed work after the Government took occupancy of the hospital. In addition, defendants state that, "Between November 1982, and June 1984, there was on-going correspondence between the defendants McBro and Freeman-White and officials of the St. Thomas Hospital and the Department of Health relating to correcting the imbalance of the concrete slab."

247

Defendants' Trial Brief at 3. The fact that such correspondence continued after the Government began to occupy the hospital is further evidence that the Government's taking occupancy did not mark the point at which defendants ceased all involvement with the hospital. To the contrary, Mr. Pence testified that punchlist items were being worked on until the end of July, 1984.

The court holds as a matter of law that the Government was not a superseding cause absolving defendants McBro and McCarthy of all liability for their negligence. In addition, defendants are free to bring an action against the Government for contribution or indemnification if they can prove that the Government was negligent.

Defendants next argue that as McBro is a division of McCarthy, the two are in reality only one entity. Evidence discloses that each are separately incorporated and have an otherwise separate existence. Further, with regard to this project, the two served different functions. McBro was the construction manager with the duty to supervise the project to assure building compliance with the plans and specifications. McCarthy, on the other hand, was the construction firm charged with the duty to build the St. Thomas Hospital.

■ Finding that the jury had sufficient evidence to support its verdict, the court will not disturb the jury's decision that defendants McBro and McCarthy were both negligent and that their negligence proximately caused plaintiff's injury.

B. *Motion of Defendant Freeman-White for J.N.O.V.*

The plaintiff claimed that Freeman was negligent in the manner in which it drew plans for the hospital, and that it was negligent in its failure to properly inspect, discover and cure the defect. Freeman argues that it cannot be found negligent as a matter of law because it met its contractual obligations.

There was evidence presented indicating that the drawings and design of the St. Thomas Hospital failed to provide for proper drainage for an exterior-weather exposed slab. Other evidence suggested that Freeman learned early on of the defect, failed to order the builder to correct the problem, and continued to certify payments to the builder. See Testimony of Sonia Waters, Tr. Nov. 5, 1986; Testimony of Roy Wadding, civil engineer, Tr. Nov. 6, 1986. There was thus sufficient evidence for the jury to find that Freeman was negligent.

The court will not hold as a matter of law that Freeman was not negligent or that its negligence did not proximately cause the injury.

## II. *Motion for a Remittitur*

"When the problem or error in the first proceeding involves the size of the verdict a court may order a conditional new trial . . . . Thus, the court may state that it will grant the new trial motion unless the opposing party agrees to accept a specified reduction . . . in the verdict." J. Friedenthal, M. Kane and A. Miller, Civil Procedure 556–58 (1985); Evers v. Equifax, Inc., 650 F.2d 793 (5th Cir. 1981). Remittitur is discretionary with the trial court. See Kazan v. Wolinski, 721 F.2d 911, 913–14 (3d Cir. 1983); 6A J. Moore, Federal Practice ¶ 59.08[7] (2d ed. 1986).

 The Court can grant a remittitur and propose a reduction in the jury award when in its discretion it decides that a verdict is so grossly excessive that it is not rationally related to any evidence adduced a trial. See David v. Pueblo Supermarket of St. Thomas, Inc., 740 F.2d 230, 239 (3rd Cir. 1984); Edynak v. Atlantic Shipping, Inc., 562 F.2d 215, 226 (3d Cir. 1977) (a jury verdict cannot stand when it is "so grossly excessive as to shock the judicial conscience"), cert. denied, 434 U.S. 1034 (1978); Murray v. Beloit Power Systems, Inc., 79 F.R.D. 590, 592 (D.V.I. 1978) (remittitur is proper when damages assessed by a jury are so unreasonable as to offend the conscience of the court); Lettsome v. Elmer, 1977 St. Croix Supp. 154 (D.V.I. 1977) (remittitur is proper when the court has a "definite and firm conviction that a mistake has been made" and where the amount of the jury award "offends the conscience of the court"). When the court finds that the jury award was the result of passion or prejudice, the proper remedy is a new trial. But where the verdict is not patently the product of bias, passion or prejudice, but is simply excessive, the court can grant a remittitur. See Kazan, supra, at 914; Schreffler v. Board of Educ., 506 F. Supp. 1300 (D. Del. 1981).

In Kazan, supra, the Third Circuit upheld the trial court's remittitur. In that case, "the verdict [was] so large as to shock the conscience of the court [that] the court ordered plaintiff to remit the portion of the verdict in excess of the maximum amount supportable by the evidence or, if the remittitur were refused, to submit to a new trial." 721 F.2d at 914, citing Scott v. Plante, 641 F.2d 117, 136 (3d Cir. 1981), vacated on other grounds, 458 U.S.

1101 (1982); Perzeproski v. American President Lines, Ltd., 319 F. Supp. 1329, 1330 (E.D. Pa. 1970). In a recent decision, the Third Circuit was even more explicit in pronouncing the duty of a trial court when excessive damages are awarded. "[A] district court should be alert to its responsibility to see that jury awards do not extend beyond all reasonable bounds." Walters v. Mintec/Intl., 785 F.2d 73, 82 (3d Cir. 1985).

■ For the reasons set forth below, the court holds that the jury verdict of one million dollars for Thomas Brown and one hundred and fifty thousand dollars for Kathy Brown shocks the conscience of the court and cannot be left to stand. Although there is no evidence that the award was the result of passion or prejudice by the jury, it exceeds the amount reasonably ascertainable from the evidence.

In its charge to the jury, the court instructed the jury on which factors it could properly consider in its damage award. The court instructed that money damages, if awarded, should be comprised of the following elements proximately caused by the accident: reasonable medical expenses; loss of earnings, reasonable compensation for any permanent or temporary injury resulting in disability to or impairment of his faculties, health, or ability to participate in activities; pain, physical and mental suffering; life expectancy. For Kathy Brown, the jury was instructed to consider the loss of her husband's services, society, and consortium.

■ In deciding what is the maximum award supportable by the evidence, the court will similarly consider the evidence in light of the above listed factors. In determining whether an award is so grossly excessive as to shock the court, the court considers factors such as: the severity of the injury, whether the injury is demonstrated by physical evidence or by subjective testimony of the plaintiff, whether the injury is temporary or permanent, the plaintiff's ability to continue with employment, the out-of-pocket expenses to plaintiff, and the amount plaintiff demanded in the original complaint. See Starling v. Ski Roundtop Corp., 493 F. Supp. 507, 511 (M.D. Pa. 1980), citing Kemp v. Philadelphia Transp. Co., 239 Pa. Super. 379, 361 A.2d 362 (1976).

It appears that as a result of the injury, Thomas Brown sustained a chip fracture of the right patella with a tiny tear of the meniscus. He wore a soft cast for four weeks and after six weeks returned to his duties as an EMT at the St. Thomas Hospital. He then engaged in physical therapy until 1984 when he relocated in South

Carolina. In South Carolina, he was and is still employed as a correctional officer at the South Carolina Department of Corrections, a minimum to medium security facility. On April 22, 1986, he underwent arthroscopic surgery by Dr. Postma, an orthopedic surgeon, to remove the tear of the meniscus. The procedure was successful. See Testimony of Dr. Jeffrey Thomas, Tr. Nov. 5, 1986. Dr. Westerband agreed with Dr. Postma's conclusion that the permanent disability to the knee was at most five percent. See Westerband Deposition at 35–36. There was no evidence of loss of future earnings or loss of future earning capacity.

Regarding costs for the initial treatment, "all of Mr. Brown's medical expenses were paid for by insurance which he maintained on his job as an EMT. Mr. Brown made no claim for these expenses at trial." Plaintiff's Brief in Opposition to Defendants' Motion at 15. The cost of the arthroscopic surgery was $2,242.45 plus medication costs. These costs were paid by insurance but subsequently the insurer requested reimbursement from Mr. Brown. See id. at 16. Brown thus sought compensation for such costs as part of his damages. As a result of the arthroscopic surgery, Brown lost ten days of work. His total loss of wages amount to $2,074.00. Upon request of plaintiff, the court took judicial notice of the table indicating that Mr. Brown's life expectancy was 34.1 years based on statistical and medical data.

Mrs. Brown testified, see Tr. Nov. 6, 1986, that as a result of the knee injury, she and her husband can no longer enjoy some of the activities such as dancing and hiking that they engaged in prior to the accident. Shopping with their two-year-old daughter is more difficult now because Mr. Brown cannot chase the child when she runs off. He can no longer help his wife carry heavy laundry or shopping bags or move heavy furniture as he had in the past. She also testified that he is not as self-confident as he used to be and tends to get frustrated with his knee.

The court has carefully considered the evidence presented at trial in order to determine the maximum amount of recovery supportable by the evidence. In addition, the court has reviewed over fifty personal injury cases involving knee injuries to aid it in assessing an appropriate award for the injuries plaintiff suffers. See Annot., 13 A.L.R.4th 212 (1982); 13 A.L.R.4th Supp. 212–358 (1986). After such a review, it is clear to the court that a one million dollar award is grossly excessive—it is far in excess of the vast majority of damage awards given in similar cases from all over the country.

In Starlings, supra, at 511, the court stated that

> Plaintiff suffered a tear of several ligaments in the knee, requiring corrective surgery. A second, albeit minor, operation was required to remove a staple connecting the ligament to the bone . . . . The injury has been described as a 25% permanent partial disability in the knee due primarily to the limited degree of extension and rotation capabilities, accompanied by slight stiffness, scar, and probable degenerative arthritis. Plaintiff cannot return to his work as a telephone lineman but has been reassigned to a different position with the same employer, without reduction in pay or benefits. No evidence was presented for a loss in earning capacity. The out-of-pocket expenses were $1,950.72 in medical and $3,099.20 in lost wages.

The jury there awarded plaintiff $100,000.00. The court deemed such an award excessive and directed plaintiff to file a remittitur of all sums in excess of $50,000.00. If plaintiff did not accept the remittitur, the defendant would be granted a new trial on the issue of damages only.

Other knee injury cases include the following. Bossier v. DeSoto Gen. Hosp., 442 So. 2d 485 (La. App. 1983), cert. denied, 443 So. 2d 1122 (1984) (fractured kneecap and femur at hip; surgery and plastic implant; permanent 25% disability to leg due to knee injury; knee will develop arthritic problems and entire knee operation will need to be performed again when implant wears out; formerly active lifestyle completely changed; residual pain; $148,516 recovery); Powell v. Philadelphia, 311 Pa. Super. 526, 457 A.2d 1307 (1983) (injury to kneecap; partial and later complete removal of kneecap; repeated hospitalization for infection of knee; permanent limitations include inability to run, pain especially in cold weather; employment prospects impaired; $150,000 award); Blancard v. 12055 Airline Corp., 432 So. 2d 328 (La. App. 1983) (knee injury; knee surgery required; 30 to 35% residual disability of right leg; long, painful recovery period; $32,681 recovery); Harris v. Day, 155 Ill. App. 3d 762, 451 N.E.2d 262 (1983) (accident causing knee injury; corrective surgery to remove cartilage and tighten ligaments; knee developed permanent progressive arthritis; additional reconstructive surgery probable; $16,000); Weiland v. Pyramid Ventures Group, 511 F. Supp. 1034 (M.D. La. 1981) (10% permanent disability of right knee, 5% of left knee; spur in right knee; 60 to 60% permanent disability of right shoulder which was fractured and dislocated; 25 to 30% permanent disability of lower

back; pain and popping knees; $203,809); Quade v. Hartfield Enter. Inc., 120 Mich. App. 704, 327 N.W.2d 343 (1982) (slip and fall; knee injury; prolonged pain; surgical scar; curtailment of sporting activities; $680,000 reduced to $250,000); Marsh v. Interstate & Ocean Transp. Co., 521 F. Supp. 1007 (D. Del. 1981) (29-year-old with 42-year life expectancy; knee injury; incapacitated for three months and unable to work for 14 months; 5% permanent impairment of knee; may need two operations; limitation on activities; pain and suffering six years and likely to suffer arthritis in future; plaintiff fears he will not be able to continue in his chosen career as a merchant seaman and will have to return to school; $100,000 reduced to $91,000); Kelaghan v. Roberts, 433 A.2d 226 (R.I. 1981) (fractures to knee and hip; three months in hospital; surgery to remove one-half of kneecap; metal screw and pin inserted in hip; could not stand more than 20 minutes; unable to walk without cane or walker; $30,000 increased by court to $90,000).

■ The court holds that the maximum award supportable by the above evidence is $200,000.00 for Thomas Brown and $25,000.00 for his wife, Kathy Brown. As stated above, if these amounts are not acceptable to the plaintiffs, the court will grant the motion for a new trial but only on the issue of damages.

### III. *Motion for a New Trial*

■ The standard for granting a new trial is more lenient than that required for judgment n.o.v. 9 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 2531 at 575 (1971). The court may grant a new trial pursuant to Fed. R. Civ. P. 59, "if required to prevent injustice or to correct a verdict that was against the weight of the evidence." American Bearing Co., Inc., v. Litton Indus., 729 F.2d 943, 948 (3d Cir.) cert. denied, 469 U.S. 854 (1984). This decision is "addressed to the sound discretion of the district court." Grove v. Dunn & Bradstreet, Inc., 438 F.2d 433, 438 (3d Cir.), cert. denied, 404 U.S. 898 (1971). Invoking the court's discretionary power in this case, the court holds that the jury's verdict on liability was not by itself so far against the weight of the evidence as to require a new trial. The court finds, however, that the grossly excessive damage award was a proper basis to require a new trial if plaintiffs reject the remittitur.

An appropriate order will be entered.

## ORDER

This matter having been brought to the court on motions of defendants; and

The court having reviewed the submissions of the parties; and

For the reasons stated in the court's opinion filed this date,

IT IS on this 5th day of MAY, 1987, hereby ORDERED that:

1. Motions of Defendants McBro Planning and Development Co., McCarthy Brothers Construction Co., and Freeman-White Associates, Inc., for a judgment notwithstanding the verdict or a new trial on the issue of liability is DENIED.

2. Motions of Defendants McBro Planning and Development Co., McCarthy Brothers Construction Co., and Freeman-White Associates, Inc., for a remittitur is GRANTED.

3. Defendants' motion for a new trial on the issue of damages is GRANTED, if plaintiffs within 20 days from date hereof, fail to accept the remittitur of all damages in excess of $200,000.00 for plaintiff Thomas Brown, and $25,000.00 for plaintiff Kathy Brown.