**James COUCH and Margaret Couch, Plaintiffs,**

v.

**ST. CROIX MARINE INC., Defendant.**

**Civ. No. 1986/65.**

United States District Court,
D. Virgin Islands,
St. Croix Division.

Aug. 31, 1987.

Lee J. Rohn, Law Offices of Lee J. Rohn, St. Croix, U.S.V.I., for plaintiffs.

R.. Eric Moore, Law Offices of R. Eric Moore, St. Croix, U.S.V.I., for defendant.

## MEMORANDUM and ORDER

DAVID V. O'BRIEN, Judge.

This case classically demonstrates what a "wheel of fortune" a jury trial for personal injuries in the Virgin Islands can become.[1] Thus, although we must deny a motion for JNOV we have no choice but to grant a new trial on damages unless the plaintiffs agree to a remittitur.[2]

### I. FACTS

The plaintiff, James Couch, contracted with the defendant, St. Croix Marine, Inc. ("marina"), on July 29, 1985, to have his vessel "Marlene" hauled and blocked so that Couch might repair it in dry dock.[3] As a part of his repair efforts, Couch also obtained the permission of the marina to use various wood planks and 55 gallon drums owned by the marina to construct a scaffolding upon which he could work along side his vessel. Despite Couch's original assertion, there was no evidence that this use was a part of his contractual relations with the marina.[4]

Couch claimed that he constructed the scaffolding by nailing the wood planks together as they lay on top of 3 drums.[5] He also nailed the planks to sawhorses which were located in between the drums. The ends of the planks were secured by wooden shims two inches thick at their widest ends. As the marina recognized in these motions, a photograph of this scaffold was introduced into evidence and viewed by the jury. (Def.Exh.C).

1. The Third Circuit commented in *Gumbs v. Pueblo Int'l Inc.*, 823 F.2d 768 (3d Cir.1987) that there is an "unfortunately increasingly familiar scenario in the Virgin Islands of an enormous jury award apparently for in excess of the injuries suffered by the plaintiff." 823 F.2d at 768. We agree.

2. These motions are made pursuant to Fed.R. Civ.P. 50(b), and Fed.R.Civ.P. 59 respectively.

3. At the time, Couch was a third-year medical student at the Caribbean School of Medicine. He was making his third-year clinical rotations at St. Croix Hospital and at the same time he was on salary as a part time nurse anesthetist at the hospital.

4. Moreover, the parties agreed that when properly constructed, the use of the planks and drums was not unreasonable. In addition, there was no evidence that the planks and drums were defective as supplied.

For these reasons, we refused the plaintiffs' request, per *Restatement (Second)* §§ 388, 392 (1965) for an instruction on the supplying of a dangerous chattel, a decision the plaintiff never objected to.

5. Couch never disputed that according to the agreement with the marina, the work he was performing on his vessel was at his own risk. *See* Def.Exh.E. However, that agreement only applied to potential damage to vessels, not for risks of negligent behavior on the part of the marina's employees.

Couch further testified that over the course of the months he worked on his boat at the marina, the scaffold had been disassembled at various times without his permission. Couch would, therefore, have to reassemble and secure the scaffold on occasion.

On the morning of the accident, Couch came to the marina to work on his vessel. (The previous day he had spent approximately four hours working while on the scaffold, but left because of activity at the marina). Couch visually inspected the scaffold, mounted it, and began to work. He stepped on what he described as an unsteady plank, and fell injuring his wrist. There was testimony by one George Trusty that an employee of the marina had altered the scaffold subsequent to Couch's prior day's activities.[6]

In this jury trial, Couch presented evidence on, and argued two theories: 1) that the activities of the marina's employees in removing the planks without his knowledge were negligent and, thus, the marina was responsible under the theory of respondeat superior; and 2) that the marina was responsible under §§ 341A, 344 of the *Restatement (Second) of Torts* for duties of landowners to invitees. After instructions on these issues, the jury returned a verdict in favor of Couch in the amount of $400,-000 and in favor of his wife Margaret for her consortium claim in the amount of $100,000.

In this motion for JNOV and/or a new trial or in the alternative a remittitur, the marina argues that Couch assumed the risk of his injuries as a matter of law and, thus, we ought to enter judgment notwithstanding the verdict;[7] that alternatively the jury verdict was against the weight of the evidence, therefore, a new trial ought to be granted; and that in any case the size of the verdict is excessive, and requires a

remittitur. While we do not agree with the marina's first two arguments, we concur with the third and find the size of the verdict shocking and as a matter of law excessive.

## II. DISCUSSION

### A. *JNOV—Assumption of the Risk*

■ The standard for granting a motion for judgment notwithstanding the verdict is the same as that for a directed verdict. *Petite v. Bodkin Development Corp.*, Civ. No. 1986/17, 1987 St.X.Supp. —— (D.V.I. May 13, 1987) [Available on WESTLAW, DCT database] (citing *Smollett v. Skayting Development Corp.*, 793 F.2d 547, 548 (3d Cir.1986)). "We must determine whether 'as a matter of law' the record contains the minimum quantum amount of evidence from which a jury might reasonably afford relief." *Smollett, supra; see also Williams v. Martin Marietta Alumina, Inc.*, 817 F.2d 1030, 1037 (3d Cir.1987). We do not judge credibility or weigh evidence. We only decide whether after giving the plaintiff every fair and reasonable inference, there was sufficient evidence upon which a jury could reasonably find for the plaintiff. *Petite, supra* at —— (citations omitted). With this in mind, we turn to the issue of assumption of the risk.

In this jurisdiction, the defense of assumption of the risk is intact only in a severely limited sense where non-negligent conduct constitutes implied or express waiver or consent. *Petite, supra* at ——. (Citing *Keegan v. Anchor Inns, Inc.*, 606 F.2d 35, 39 n. 5, 41 (3d Cir.1979); *Smollett, supra* at 548)). The plaintiff must know of the risk, appreciate its character and voluntarily and reasonably choose to confront the risk. *Petite, supra* at —— (citing *Smollett, supra* at 548; *Smith v. Seven Springs Farm, Inc.*, 716 F.2d 1002, 1009 (3d Cir.1983)).

---

**6.** As the marina pointed out, there was testimonial evidence that Couch fell at home and not at the marina. The jury obviously chose to believe Couch, and this was in their discretion as the trier of disputed material facts.

**7.** We denied the marina's motion for a directed verdict both at the close of the Couch's evidence,

and its own case specifically on the issue of assumption of the risk for the same reasons we discuss *infra* at 225–226. It is for these same reasons we declined to give the marina's proposed jury instructions on assumption of the risk.

The evidence in this case did not support a jury instruction on assumption of the risk, nor does it, viewed in the light most favorable to Couch, support a finding of assumption of the risk as a matter of law. There was not a shred of evidence which supports a conclusion that Couch knew of the risk, or voluntarily consented to be exposed to the risk imposed by the scaffold as altered. Indeed, the evidence was that Couch visually inspected the scaffold prior to commencing work and found it, so he thought, as he had left it the day before. This is not similar to the *Petite* case.[8]

## B. *Sufficiency of the Evidence*

■ The Third Circuit has recently noted that in reviewing a jury verdict, the evidence and all reasonable inferences therefrom ought be viewed in the light most favorable to the verdict winner so as to ascertain whether there is sufficient evidence to support that verdict. *Tyson v. Litwin Corporation*, 826 F.2d 1255, 1258 (3d Cir.1987) (citing *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir.1979) (in banc)). While the evidence in this case could be described as thin, it was ample to support the verdict.

Both Margaret and James Couch testified as to the fall. In addition, George Trusty said he had seen a marina employee alter the scaffold. Although there was conflicting testimony from Mr. Walters and conflicting evidence from Couch's medical records, the jury apparently believed Couch.[9] It is not our place to view credibility, this is for the jury, therefore, our judgment may not be substituted for theirs.[10]

## C. *Remittitur/Damages*

■ Another judge assigned to this District recently reiterated the basis for granting a conditional new trial when the verdict winner refuses to accept a reduction in a jury award. *See Brown v. McBro Planning and Development Co.*, 660 F.Supp. 1333 (D.V.I.1987). If we find in our discretion that the award is so grossly excessive that it is not rationally related to the evidence such that it shocks the judicial conscience, we may grant a remittitur. *Id.* at 1337 (citations and quotations omitted).

Our task is to decide what maximum award is supportable by the evidence and then compare it to the actual award. As was done in *McBro*, we will consider the severity of the injury whether demonstrated by physical evidence or subjective testimony, whether the injury was temporary or permanent, the plaintiff's ability to continue with employment, the out-of-pocket expenses to the plaintiff, and the original amount demanded by the plaintiff in the complaint. *Id.* at 1338 (citations omitted). We will do this as was done in *McBro*, in light of examples of awards for similar injuries in other cases.[11] *McBro, supra* at 1339–1340. *See also Precopio v. City of*

8. In *Petite*, we entered JNOV because we found that the plaintiff knew of the risks and voluntarily and reasonably confronted those risks inherent in driving his motorcycle over a mound on the construction site of Davis Bay road. *See Petite, supra.*

9. The marina argues that a verdict under *Restatement (Second) of Torts* § 344 (1965) can not stand since the plaintiffs admitted having past notice as to prior third-party alteration of the scaffold. However, there was no evidence that the plaintiffs were aware of the alteration on the occasion of the accident, or that the marina discovered the alteration and made the Couchs aware of it. Moreover, the case also went to the jury on a straight negligence theory.

10. The marina argues that instructing the jury on *Restatement (Second) of Torts* § 344 was inappropriate given that the pleadings did not allege interference by third-parties. However, the marina never objected to the instruction at trial. Moreover, the proof warranted such an instruction.

11. In both *Gumbs, supra,* and *Williams, supra,* the Third Circuit granted appellate remittiturs. However, in neither case, did the court give us guidance as to the standards to be employed in assessing the maximum award justifiable by the evidence, except to the extent the court recited examples of cases of appellate remittitur without regard to the similarity of the injury. Specifically in *Gumbs,* the Circuit criticized this Court for not enumerating the basis upon which we determined the maximum award supportable by the evidence, and, thereafter, reduced the amount we chose further without explanation of how it reached its determination. *Gumbs,* 823 F.2d at 772. Thus, we will adhere to the *McBro* method, but apply it in light of the Circuit's review in *Gumbs* and *Williams.*

*Detroit, Dept. of Transp.,* 415 Mich. 457, 330 N.W.2d 802, 808–809 (1982).

### 1. *Damages (Mr. Couch)*

We first note that the entirety of Couch's jury award was for pain and suffering, and loss of enjoyment of life for non-occupational activities except for a minor amount of medical expenses. No evidence of economic loss was presented to the jury for such was barred for counsel's failure to comply with Fed.R.Civ.P. 26(b)(4)(A)(i), and the magistrate's pretrial order. *See Couch v. St. Croix Marine Inc.,* ("*Couch I*") Civ. No. 86/65, 1987 St.X.Supp. —— (D.V.I. August 7, 1987) [Available on WESTLAW, DCT database].

Secondly, Couch's injury consisted of several broken bones in his left wrist, specifically his radius. He also dislocated his left lurate carpal bone. It has taken three surgical procedures to correct the difficulties those fractures created, but as his expert testified, he is still left with 50% disability, and some pain for which he takes aspirin. He has numbness in his fingers and has shooting pains up and down his arm. Couch also has osteoarthritis in his left wrist. He may need additional surgery.

Prior to the accident, Couch was a practicing nurse anesthetist, which he can no longer do on a full time basis. Although he alleged his medical career was hampered by the accident, the evidence was that he completed his education, obtained some quality recommendations, but simply failed the exam necessary to practice. He has not taken the exam again, and this was left unexplained.

Couch can no longer play golf. He is more irritable. But there was no other evidence of a reduction in his other social and non-occupational activities.

Given all of the above, it is clear that Couch's injury was somewhat serious and this is evidenced by both physical evidence, and subjective testimony. The injury appears to be permanent, and it may worsen over time. His past medical expenses

amount to $9,830.99, and the cost of future surgery is estimated at $5,000.

However, in light of the foregoing, the jury's verdict of $400,000 was far in excess of that proven by the evidence. If we subtract the medicals, nearly $385,000 was given for pain and suffering. We hold that this was excessive and that the evidence sustains a verdict of no more than $150,000 plus proven medicals.

This conclusion is borne out by our review of cases with similar fact patterns. They support our finding that $400,000 is excessive as a matter of law.[12] For example, in *Gumbs* the Third Circuit described the case of *Edynak v. Atlantic Shipping, Inc.,* 562 F.2d 215 (3d Cir.1977), *cert. denied* 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978), where there was little evidence of loss of earning capacity, as follows:

> In *Edynak,* the parties stipulated that the plaintiff's medical expenses totalled $12,746.90, and his wage loss was $13,-669.19. The balance of the jury's award, $273,500 was for loss of earning capacity and for pain and suffering. *We recognized that the award for loss of earning capacity, pain, and suffering was quite high and had we been the district judge, we might have found it excessive.* On the facts, however, we could not say that it was contrary to all reason and that the award shocked the conscience of the court. Edynak suffered a gruesome permanent injury to his hand, requiring surgical operations to restore its partial use. His permanent disability limited his work horizon and prospects for promotion. His hand required extensive grafting and had to be sewn to his abdomen for many days. Nine surgical procedures over three years were necessary to reconstruct the hand which remained permanently disfigured and of limited use.

*Gumbs,* at 771–772 (explaining *Edynak, supra* at 226–227 (emphasis added)). It can not be said Couch's injuries are as severe as those described in *Edynak.*

Moreover, the Circuit's conclusion that the *Edynak* verdict was high is supported by other recent decisions. *See England v. Gulf & Western MFG, Co.,* 728 F.2d 1026

---

**12.** *See* Damages for Injuries to Arms and Hands, L2 ALR 4th, Supp. 96–218 (1986).

(8th Cir.1984) (trial court did not abuse its discretion in ordering a new trial on damages after a jury returned a verdict of $700,000 where the victims had been crushed in a punch press); *see also Clark v. Burlington Northern Inc.*, 726 F.2d 448 (8th Cir.1984) (award of over $171,000 to employee who suffered permanent hand injury in railroad accident, requiring eight operations and causing employee to experience much physical pain, and enough emotional stress to put him in psychiatric institute, was not excessive);[13] *Feyers v. United States*, 561 F.Supp. 362 (E.D.Mich.1983), *vacated on other grounds*, 749 F.2d 1222 (6th Cir.1984) (employees of corporation whose injury reduced his right hand and forearm to an essentially useless appendage and suffered extreme pain and suffering and humiliation which would continue, was entitled to $200,000 in compensatory damages); *Lewis v. Exxon Corp.*, 451 So.2d 24 (La.App.1984) ($80,000 award for pain and suffering where victim pipe-fitter/welder injured by gas line explosion suffered compound fractures of the left humerus with resulting permanent loss of strength and motion in left arm and hand, required bone grafts and insertion of metal plate to close the fracture.); *Dunaway v. Rester Refridgeration Service Inc.*, 428 So.2d 1064 (La.App.1983) ($100,000 was maximum award for pain and suffering where right handed pedestrian also injured left elbow as a result of the defendant's

negligence first needed splinting and physical therapy, but subsequently fluid development required two surgical procedures, and enhanced development of degenerative arthritis such that a brace was needed for arm when in use.) *See also Precopio, supra*, 330 N.W.2d at 807, 810.

These cases do not indicate the appropriate amount for Couch's injuries, but they suggest that Couch's award was far in excess of what is allowable by the evidence.

Even if we were to hesitate to grant a remittitur after this review, recent cases from this jurisdiction involving other sorts of injuries would quicken our judgment. For example, in *Gumbs*, the Circuit reversed this Court's reduction of a $900,000 award to $575,000 by further remitting to $235,000 for pain and suffering, mental anguish and loss of enjoyment of life. 823 F.2d at 770. Gumbs had sprained her coccyx, torn ligaments, had scar tissue and some back pain but did not have a herniated disc nor did she require hospitalization or lose time from work.[14]

In addition, in *Gumbs*, the Circuit referred to its recent decision in *Williams*. There the Circuit cited to the recent appellate trend to review the merits of damage awards. 817 F.2d at 1041. It then went on to hold that a $300,000 award for pain and suffering to a worker whose only pain was in his lower back when he stood up,

---

**13.** We recognize that cases of denial of appellate remittitur do not suggest at what level a jury award becomes excessive as a matter of law, but such cases are simply illustrative of the type of judgments that have been granted in cases of similar injuries as Couch. *See also Chavez v. Zapata Ocean Resources, Inc.*, 155 Cal.App.3d 115, 201 Cal.Rptr. 887 (1984); *Ashman v. Sharon Steel Corp.*, 302 Pa.Super. 305, 448 A.2d 1054 (1982); *Fahringer v. Rinehimer*, 283 Pa.Super. 93, 423 A.2d 731 (1980); *Wright v. Fox-Stanley Photo Products*, 639 S.W.2d 407 (Mo.App.1982); *Coulter v. Michelin Tire Corporation*, 622 S.W.2d 421 (Mo.App.1981) *cert. denied* 456 U.S. 906, 102 S.Ct. 1752, 72 L.Ed.2d 162 (1982); *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927 (5th Cir. 1982); *Moser v. Texas Trailer Corp.*, 623 F.2d 1006 (5th Cir.1980) *modified on other grounds* 630 F.2d 249 (5th Cir.1980) (trial court's award of $511,000 for pain and mental suffering was not excessive where the plaintiff sustained bruised temporal lobes, skull fracture, pain and limitation of movement of the right arm, frac-

tured ribs, and chest pains. He underwent surgery to improve the condition of his right arm, but still had permanent restriction of action and pain and needed medication. He suffers from outburst of violence, headaches, difficulty reading, psychoneurotic repressive reaction with suicidal tendencies as well as reduced sexual desire, dizziness and loss of energy.)

**14.** The *Gumbs* Court distinguished damages for loss of enjoyment of life as follows:

The component relating to loss of enjoyment of life in some respects duplicates the component of pain and suffering, but also represents a deprivation of the opportunity to participate in normal social, athletic, or recreational activities in which a person without Gumbs' injury could engage. Included in this component may also be such allowance as the jury saw fit for the effect, if any, of plaintiff's injury on her marriage and family life.

823 F.2d at 774 (citation omitted).

stretched, walked or sat for a long time, and who as a result could not dance; but who was not disabled and could work except for lifting weights greater than 20 pounds, was excessive to the extent it was greater than $100,000. *Id.* at 1040–1041. *See also Walters v. Mintec Int'l*, 758 F.2d 73, 80–82 (3d Cir.1985); *Kazan v. Wolinski*, 721 F.2d 911, 914 (3d Cir.1983) (trial court did abuse its discretion to remit a $150,000 jury award to $90,000 where plaintiff had cervical sprain which was permanent, and a surgically correctable injury to the arm.) *But see, David v. Pueblo Supermarket*, 740 F.2d 230 (3d Cir.1984); *Murray v. Fairbanks Morse*, 610 F.2d 149 (3d Cir.1979).

Finally, in *McBro, supra*, the Court granted a remittitur at $200,000 after a jury awarded the plaintiff $1,000,000, where the plaintiff suffered a chip fracture of the right patella and a tiny tear of the meniscus in the knee. He wore a soft cast for four weeks and after six weeks returned to work. The permanent disability after rehabilitation was 5%. There was no evidence of loss of future earnings or loss of future earning capacity. 660 F.Supp. at 1333.

These cases simply illustrate the judicial trend to carefully review the award of damages vis-a-vis the proof of damages at trial. In the instant case Couch's proof does not come close to sustaining a verdict for nearly $385,000. Conspicuously absent form this proof is evidence of the type of life-threatening or life-changing pain which causes many to reevaluate their ability to do the basic functions of life. While we do not belittle Couch's injuries, or the pain he does suffer, we can not but hold that the jury's assessment of his damages was excessive as a matter of law.

2. *Damages (Mrs. Couch)*

■ Margaret Couch presented little evidence to support a jury award in the amount of $100,000. She testified that she and Mr. Couch can not play sports together

or with their children as they usually did and that he can not help her with household chores. She testified that she felt the marriage was now shaky. But there was no evidence of life-changing circumstances of the type which could justify such a large award. We hold, therefore, that to the extent the award for Mrs. Couch exceeds $25,000 it is excessive as a matter of law. *See e.g., Steinmetz v. Bradbury*, 618 F.2d 21 (8th Cir.1980).

### III.  CONCLUSION

For the foregoing reasons we will order a new trial on damages if James Couch does not file a remittitur in the amount of $150,000 plus medicals within 15 days of this order, and we will order a new trial on damages if Margaret Couch does not file a remittitur in the amount of $25,000 within 15 days of this judgment.[15]

### ORDER

THIS MATTER is before the Court on motions of the defendant for JNOV, or in the alternative, a new trial or remittitur. Having filed an opinion of even date herewith, and the premises considered, now therefore it is

*ORDERED:*

THAT the defendant's motion for JNOV is hereby DENIED.

It is further *ORDERED:*

THAT the defendant's motion for a new trial on damages be, and the same is hereby, GRANTED unless the plaintiff James Couch files a remittitur with this Court of all sums in excess of $164,830.99 within fifteen days of this order, and further that a new trial in damages is GRANTED as to Margaret Couch unless she files a remittitur of all sums in excess of the amount of $25,000 within fifteen days of this order.

---

**15.**  We make no holding as to the issues for the new trial on damages, believing such would only be advisory at this time. Those questions are the proper matters for pretrial motions in limine. We will, however, require the magistrate to expeditiously set a schedule for a Rule 16 pretrial if a new trial becomes necessary. While the parties argued their respective positions, neither side chose to brief the matter.