Marianne POWELL

v.

**J.T. POSEY COMPANY, Appellant.**

No. 84–1639.

United States Court of Appeals, Third Circuit.

Argued May 2, 1985.

Decided July 2, 1985.

Daniel P. Lynch (Argued), Susan Warnock Thomas, LaBrum & Doak, Philadelphia, Pa., for appellant.

Roger J. Harrington (Argued), Sally J. Caldwell, Pierre B. Pie', II, Philadelphia, Pa., for appellee.

Before SEITZ, WEIS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

The primary issue on appeal in this products liability case is whether the district court should have submitted the causation issue to the jury. The complaint alleged personal injuries to the plaintiff, Marianne Powell, a licensed graduate practical nurse. The case was tried to a jury and a verdict was returned in her favor[1] against the manufacturer of the product, J.T. Posey Company (the Company or manufacturer). The United States District Court denied motions for a directed verdict, judgment notwithstanding the verdict, and, in the alternative, for a new trial, and entered judgment in favor of the plaintiff. Defendant appeals. We reverse and remand for the entry of judgment for the defendant notwithstanding the verdict.

### I.

The plaintiff, Marianne Powell, was employed by Nazareth Hospital in Philadelphia as a practical nurse. On October 20, 1979, the day she sustained her injuries, plaintiff was assigned, as she had been for her one-year term of employment at the hospital, to its sixth floor. Many of the patients assigned to this floor had been admitted for geriatric care, including the patient involved in the incident, Frank Adams. Adams, eighty-four years old, was under treatment for decubitus ulcers and certain complications of senility.

On the morning in question, plaintiff, with the assistance of another person, got Adams out of bed, bathed him, and assisted him in dressing. She then placed him in an armchair adjacent to his bed and secured him to it with a hand-tied vest manufactured by the defendant. The vest is designed by the Company as part of the "Posey Houdini Security Suit." The vest is the upper portion of the suit. The suit serves a more restrictive purpose, but the vest

---

1. Plaintiff filed her complaint initially in the Court of Common Pleas of Philadelphia, Pennsylvania. Defendant successfully petitioned for the removal of the suit to the United States District Court for the Eastern District of Pennsylvania on the basis of diversity jurisdiction. It is undisputed that the law of the forum state, Pennsylvania, applies.

may be worn alone if desired.[2] It is made of dacron mesh material and the vest is applied to the patient as though it were a "T-shirt." Long straps attached to it are then hand-tied by the nurse or attendant to the back of the patient's chair or under the bed, as the case may be, supposedly out of the patient's reach. In accordance with Nazareth Hospital policy, such hand-tied vests were routinely issued to all patients over sixty-five years of age. Wrist straps are added for patients requiring a more active restraint. Adams, a small, thin man weighing about 100 pounds, was not known to be the type of patient who required an active form of restraint.

After hand-tying the straps of the vest, plaintiff left Adams. After the passage of about an hour, Adams informed a hospital employee that he wished to return to his bed. That employee left Adams, paged plaintiff, and told her that Adams wanted to get back to bed. Plaintiff went to the door of Adams' room and told him that she would be with him "in a minute." It appeared to her at that time that the straps to his vest were still tied. She went to the nurse's station to secure assistance in moving him and when she returned to the room she saw that he had left the chair, that the straps were untied, and that he was moving toward his bed. He appeared to be falling and her instinctual reaction was to grasp Adams around the waist—"like in a bear hug"—and together they fell onto his bed. Plaintiff claimed that as they fell onto the bed she injured her back.

In her suit against the manufacturer, plaintiff contended that the defendant was strictly liable under section 402A of the Restatement (Second) of Torts for defective design and for failing to warn adequately of the danger of a patient's being able to remove the hand-tied vest himself. The jury rejected the defective design claim, but found the Company liable on the failure-to-warn theory.[3] The jury awarded plaintiff damages of $192,736.20. With Pa. R.Civ.P. 238 delay damages, the total verdict against the defendant amounted to $237,619.97.

## II.

■ On appeal, the defendant raises numerous issues for our consideration. These issues include the propriety of certain evidentiary rulings made by the district court, whether the manufacturer had a duty to warn of the allegedly obvious possibility that a patient might be able to untie a hand-tied vest, and whether the lack of an adequate warning was the proximate cause of plaintiff's injuries. Because we conclude that the district court erred in submitting the issue of causation to the jury, we need not address all of these issues. Rather, assuming without deciding that the manufacturer had a duty to warn under Pennsylvania law, we hold that the manufacturer is entitled to judgment in its favor as a matter of law because the plaintiff has failed to prove that the existence of any warning would have caused the plaintiff to act any differently than she did. That is, we conclude that the plaintiff has not proven that the lack of a warning was the "cause-in-fact" of the harm.

■ In reviewing the district court's denial of the defendant's motion for judgment notwithstanding the verdict, our standard of review is whether there was evidence presented at trial upon which the jury could properly return a verdict for the plaintiff. More particularly, a judgment notwithstanding the verdict may be granted under Fed.R.Civ.P. 50(b) "only if, as a matter of law, 'the record is critically deficient of that minimum quantity of evidence

2. The addition of the bottom part serves to prevent the patient from sliding down, or choking himself in the vest, and also reduces his range of movement.

3. The trial court propounded certain interrogatories to the jury. To the question whether the vest contained a defect in design, the jury answered in the negative. To the question whether the vest contained a defect because it was not accompanied by warnings necessary to such a garment, the jury responded in the affirmative. To the question whether that defect was a proximate cause of injury to Ms. Powell, the jury answered "yes."

from which a jury might reasonably afford relief.'" *Dudley v. South Jersey Metal, Inc.*, 555 F.2d 96, 101 (3d Cir.1977) (quoting *Denneny v. Siegel*, 407 F.2d 433, 439 (3d Cir.1969)); *see also Danny Kresky Enterprises Corp. v. Magid*, 716 F.2d 206, 209 (3d Cir.1983). "On appeal, the appellate court should apply the same standard as the trial court in determining the propriety of a judgment n.o.v." *Id.*

▆ In a case predicated, under Pennsylvania strict liability law, on a defendant's failure to warn of latent dangers, "the plaintiff must establish that the failure to warn adequately of such dangers was the cause-in-fact and proximate cause of his or her injuries." *Conti v. Ford Motor Co.*, 743 F.2d 195, 197 (3d Cir.1984); *see also Greiner v. Volkswagenwerk Aktiengeselleschaft*, 540 F.2d 85, 93–94 (3d Cir.1976). Although the question of causation is ordinarily for the jury, *see* W. Prosser, *Handbook of the Law of Torts* § 45, 289–90 (4th ed. 1971), "if the relevant facts are not in dispute and the remoteness of the causal connection between the defendant's negligence and the plaintiff's injury clearly appears, the question becomes one of law." *Greiner v. Volkswagenwerk Aktiengesellschaft*, 429 F.Supp. 495, 497 (E.D.Pa.1977), *on remand from* 540 F.2d 85 (3d Cir.1976) (quoting Pennsylvania Supreme Court in *Liney v. Chestnut Motors, Inc.*, 421 Pa. 26, 29, 218 A.2d 336, 338 (1966)). When, as in the instant case, the plaintiff's theory of liability is that the defendant failed adequately to warn, "the evidence must be such as to support a reasonable inference, rather than a guess, that the existence of an adequate warning may have prevented the accident before the issue of causation may be submitted to the jury." *Conti*, 743 F.2d at 198.

In the case under consideration, there was not sufficient proof of causation to allow the case to go to the jury.[4] It was Nazareth Hospital's policy to issue hand-tied vests to all patients over sixty-five years of age. For the violent, or those prone to escape from a vest, more secure restraining devices, such as wrist straps, would also be used.[5] With respect to Adams, the patient involved in the accident, the plaintiff admitted that he was not a known threat to escape from hand-tied vests. Nor was there any indication that Adams was a threat to himself or other people. Thus, under the hospital's general policy, the use of an additional form of restraint, such as a Posey suit or wrist straps, was clearly not indicated for Adams. These facts suggest that, even if the manufacturer had warned of the possibility that patients in a Posey vest could untie themselves, the plaintiff would not have acted differently. She has presented no evidence to the contrary. We thus conclude that the plaintiff would have applied the hand-tied vest, even if she knew that it could be untied, and that she would not have used wrist restraints because the patient had given no indication that further restraint was necessary.

Overall, there was no proof that, "but for" the absence of an adequate warning, the harm would not have resulted. The jury apparently based its contrary conclusion on the mere speculation that a warning might have induced the plaintiff to contravene hospital policy and apply wrist

---

4. Contrary to the assertions of the defendant, the plaintiff's instinctive reaction in grabbing Adams does not preclude a finding of causation. Admittedly, a warning would have had no impact on plaintiff's actions at the very moment she grabbed Adams. However, had there had been a warning that a patient could possibly free himself from the vest, any necessary precautions could have been taken prior to the accident. For instance, if plaintiff realized that the vest was not escape-proof, and felt that Adams required more effective restraint, plaintiff could have applied wrist straps to him. The

proper focus of our inquiry, therefore, is on any additional precautions that might have been taken if there had been a warning.

5. This use of wrist straps in cases where the patient is a known threat to escape from a vest suggests that the hospital realizes that at least certain brands of hand-tied vests can be untied by the patients themselves. Nevertheless, the hospital's general policy is that, unless the nature of the patient is such that further restraint is indicated, only hand-tied vests need be used.

straps to Adams. This circuit has held that such speculation is not a sufficient basis on which to impose liability. *See Conti v. Ford Motor Co.*, 743 F.2d 195 (3d Cir.1984). In *Conti,* the plaintiff sustained injuries when her husband started his standard transmission car without disengaging the clutch. The car lurched backwards and the plaintiff, who was in the process of entering the car at the time, lost her balance and fell. The *Conti* court held that the defendant was "entitled to judgment in its favor as a matter of law because the Contis [had] failed to prove that the existence of any additional warning may have forestalled Mr. Conti's 'momentary inadvertence' ... in failing to disengage the clutch while starting the car in gear." 743 F.2d at 197. The court stated that "mere speculation that if Mr. Conti's eyes had caught a sticker warning him to depress the clutch ... he may have remembered [to do so]" was not a sufficient basis on which to impose liability. *Id.* at 198.

In the instant case, as in *Conti,* there is insufficient evidence in the record to support a reasonable inference that a warning would have made the plaintiff act differently. She would have placed Adams in the hand-tied vest without any additional restraint, warning or no warning, because he was over sixty-five years of age, non-violent, and not known to need further restraint. She would have rushed to grasp Adams, warning or no warning, when he appeared to her to be falling, because that was her instinctive reaction. The manufacturer could have placed a warning in its literature, on the vest itself, or even on the door of Adams' room, and yet this accident still would have occurred.

### III.

In summary, liability in this type of case may result only when there is sufficient evidence that a warning might have made a difference. *See Conti,* 743 F.2d at 199; *Sherk v. Daisy-Heddon, A Division of Victor Comptometer Corp.,* 498 Pa. 594, 600–03, 450 A.2d 615, 619–20 (1982). We conclude that the evidence presented here was

insufficient as a matter of Pennsylvania law to support a reasonable inference that the existence of warnings might have prevented the accident from occurring. Thus, we hold that the district court should have decided as a matter of law that the presence of a warning would not have altered the plaintiff's conduct. Hence, it erred in submitting the causation issue to the jury. The judgment of the district court will therefore be reversed and the case remanded to the district court with a direction to enter an order granting defendant's motion for judgment notwithstanding the verdict.

Each side to bear its own costs.