793 F.2d 547
 Helene SMOLLETT and Leonard Smollett
v.
SKAYTING DEVELOPMENT CORP., d.b.a. Virgin Wheels.
Appeal of SKAYTING DEVELOPMENT CORPORATION d/b/a Virgin Wheels.
 No. 85-3333.
 United States Court of Appeals,
Third Circuit.
 Argued April 30, 1986.
Decided June 20, 1986.
Rehearing and Rehearing In Banc Denied July 17, 1986.
 
 Douglas L. Capdeville (argued), Law Office of R. Eric Moore, Christiansted, St. Croix, V.I., for appellant.
 John E. Stout (argued), Grunert, Stout and Smock, Charlotte Amalie, St. Thomas, V.I., for appellees.
 Before HUNTER, WEIS, and MANSMANN, Circuit Judges.
 OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 On February 15, 1981, Helene Smollett and her husband attended a fundraiser at a skating rink owned by Skayting Development Corporation. Smollett, who was thirty-three years old at that time, is an experienced skater. Although she had not skated for the two years before she went to the appellant's rink, she had skated over fifty times in her life.
 
 
 2
 When Smollett and her husband entered the rink, they noticed that there were no guardrails. They discussed this with the owner, Les Cooper, who told them that this design was the practice at many new rinks to further safety by avoiding the use of guardrails which could become loose and collapse unexpectedly. Smollett did not take skating lessons although they were offered to everyone at the fundraiser.
 
 
 3
 The skating area, which had a polyurethane surface, was raised three to five inches higher than the surrounding floor, which was carpeted. Smollett skated for about ninety minutes, until 7:50 p.m., without mishap. The rink was not overcrowded, with fifty to one hundred people skating. There were eight skateguards working that night and at least two were on the skating floor. Several signs reading "skate at your own risk" were posted in the rink. The skaters included many children and inexperienced skaters. At 7:50 p.m. Smollett's husband wished to leave. She told him she would join him after she took two last turns around the rink. On her last lap, Smollett skated behind a young child who fell. To avoid the child and a skater on her left, she swerved to the right onto the carpeted area. She fell and broke her left wrist. Her injury required surgery on the day of the accident and again one year later.
 
 
 4
 Smollett and her husband filed this suit against the rink. As a defense, Skayting asserted that Smollett had assumed the risk of injury. After a two day jury trial on December 17 and 18, 1984, the jury returned a verdict for Smollett but made no award to her husband. Because the jury found Smollett 50% at fault, her award was reduced from $50,000 to $25,000. The court denied Skayting's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.
 
 
 5
 In considering a motion for a judgment notwithstanding the verdict, a court uses the same standard applied in considering a motion for a directed verdict. See Neville Chemical Co. v. Union Carbide Corp., 422 F.2d 1205, 1210 n. 5 (3d Cir.), cert. denied, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970). The district court must determine whether, as a matter of law, the record contains the "minimum quantum of evidence from which a jury might reasonably afford relief." Denneny v. Siegel, 407 F.2d 433, 439 (3d Cir.1969). As an appellate court, we must apply this same standard and determine whether there was sufficient evidence to permit the denial of a judgment notwithstanding the verdict. See Powell v. J.T. Posey Co., 766 F.2d 131, 134 (3d Cir.1985); Acosta v. Honda Motor Co., 717 F.2d 828, 840-41 (3d Cir.1983).
 
 
 6
 We hold that it was error to deny the skating rink's motion for judgment notwithstanding the verdict because there was insufficient evidence to find that Smollett had not assumed the risk of injury. The Virgin Islands has enacted a comparative negligence statute, V.I.Code Ann. tit. 5, Sec. 1451 (Supp.1985) and thereby removed the contributory negligence bar to recovery. Assumption of risk is still available as a complete defense to a negligence claim but it has been limited by enactment of the comparative negligence statute. Assumption of risk, to the extent it incorporates the concept of fault on the part of the actor and, therefore, overlaps with contributory negligence, is no longer available as a defense. However, assumption of risk can still be applied to "non-negligent conduct which constitutes waiver or consent" Keegan v. Anchor Inns, Inc., 606 F.2d 35 (3d Cir.1979) but which involved no negligence. In such cases the absolute bar to recovery remains.
 
 
 7
 The evidence in this case shows that Smollett fully understood the risk of harm to herself and voluntarily chose to enter the area of risk. See Restatement (Second) of Torts Sec. 496C (1965). She, therefore, implicitly assumed the risk of injury. Smollett admitted that she was aware that there were no guardrails, that the skating area was covered with a smooth surface and was elevated, and that the area around the rink was carpeted. All of these circumstances were clearly visible as was the fact that young and inexperienced skaters were at the rink that day.
 
 
 8
 Smollett contends that she did not assume the risk because she was not aware of the dangerous condition created by the combination of three circumstances at the rink: 1) lack of guardrails; 2) elevated skating area; 3) difference in coefficient of friction between the skating surface and the surrounding carpeted area. We believe that Smollett was aware of the risk of falling when going from the skating area to the surrounding carpeted area. To reach the rink she had to walk on the carpeted area with her skates and, therefore, she had to be aware that the carpet slowed down the wheels on the skates. She had skated many times before and knew that other skaters might fall down in her path.
 
 
 9
 We conclude that Smollett assumed the risk of injury. We will reverse the judgment of the district court denying a judgment notwithstanding the verdict and direct the district court to enter judgment for Skayting Development Corporation.[1]
 
 
 10
 MANSMANN, Circuit Judge, dissenting.
 
 
 11
 The majority holds that "it was error to deny the skating rink's motion for judgment notwithstanding the verdict because there was insufficient evidence to find that Smollett had not assumed the risk of injury." I believe that the defendant has not demonstrated that the record lacks a minimum quantum of evidence from which a jury could reasonably have afforded relief. Therefore, I would affirm the judgment of the district court.
 
 I.
 
 12
 Assumption of the risk is an affirmative defense which has traditionally been considered an absolute bar to recovery. See Restatement (Second) of Torts Sec. 496A (1965). Although the Virgin Islands has enacted a contributory negligence statute which permits recovery on a pro rata basis where the plaintiff's negligence does not exceed that of the defendant, V.I.Code Ann. tit. 5, Sec. 1451 (Supp.1985), the assumption of the risk doctrine is nonetheless an available, although limited, defense. Keegan v. Anchor Inns, Inc., 606 F.2d 35 (3d Cir.1979). As we noted in Keegan, the assumption of the risk doctrine "embraces two distinct concepts--one akin to waiver or consent, the other a species of negligence." Id. at 39 n. 5 (citing Pritchard v. Liggett & Myers Tobacco Co., 350 F.2d 479 (3d Cir.1965), cert. denied, 382 U.S. 987, 86 S.Ct. 549, 15 L.Ed.2d 475 (1966), amended on other grounds, 370 F.2d 95 (3d Cir.1966), cert. denied, 386 U.S. 1009, 87 S.Ct. 1350, 18 L.Ed.2d 436 (1967)). To the extent that the assumption of risk doctrine involves a negligence theory, the doctrine has been replaced by the Virgin Islands contributory negligence statute. Keegan, 606 F.2d at 40. To the extent that the theory involves a consent or waiver principle, it remains a viable defense. Id. at 41; cf. Smith v. Seven Springs Farm, Inc., 716 F.2d 1002, 1008 (3d Cir.1983) (reaching the same conclusion in the context of the Pennsylvania Skiers' Responsibility Act).
 
 
 13
 In Keegan, we explained that portion of the assumption of the risk theory which continues to operate as an absolute bar to recovery.
 
 
 14
 Assumption of risk in its primary and strict sense involves voluntary exposure to an obvious or known danger which negates liability. Under this concept recovery is barred because the plaintiff is assumed to have relieved the defendant of any duty to protect him. (emphasis added) (citations omitted).
 
 
 15
 Id. at 39 n. 5 (quoting Pritchard, 350 F.2d at 484). The defendant, who asserts the assumption of the risk defense in its primary sense "has the burden of demonstrating that no duty was owed plaintiff." Smith, 716 F.2d at 1008 (citing Restatement (Second) of Torts Sec. 496G (1965)). "Defendant can sustain its burden by proving that plaintiff knew of the risk, appreciated its character, and voluntarily chose to accept it. Jones v. Three Rivers Management Corp., 483 Pa. 75, 88, 394 A.2d 546, 552-53 (1978)." Smith, 716 F.2d at 1008-09. The defendant must also demonstrate that the "plaintiff's conduct in knowingly and voluntarily confronting the risk was reasonable. Prosser, Law of Torts Sec. 68, at 440 (4th ed. 1971)." Smith, 716 F.2d at 1009.
 
 II.
 
 16
 The defendant here claims that the jury's failure to find assumption of the risk was against the clear weight of the evidence. The defendant argues that the plaintiff "was specifically aware of each and every hazard which she is now claiming contributed to her injury." "She could not help but be aware," concludes the defendant, "of the cumulative effect of each of these so-called hazards."
 
 
 17
 The plaintiff admits that she was aware of the separate hazards which contributed to her injuries: the lack of guardrails, the elevation of the skating surface, and the different textures of the carpeted surface and the polyurethaned skating floor. The plaintiff maintains, however, that the defendant is relying impermissibly on the assumption of the risk doctrine in its secondary sense--as a theory of negligence. The plaintiff also alleges that there is sufficient evidence to support the jury's verdict.
 
 
 18
 I believe that the jury's failure to find that the defendant had satisfied its burden under the assumption of the risk doctrine is not contrary to the clear weight of the evidence. While the evidence does indicate that the plaintiff knew of the separate hazards, there is no evidence that the plaintiff knew of and appreciated how the various hazards could work in combination. The majority speculates that the plaintiff must have known of the risk because she had walked on the carpeted area with her skates and was aware, therefore, that the carpet slowed her rate of speed. The majority's speculation suggests only that the plaintiff was aware of the separate hazard of the carpeted area. It does not address the issue of the plaintiff's knowledge of the risk created by the combined hazards. The defendant also fails to establish, as it must, that the clear weight of the evidence is contrary to a finding that the risk was not reasonable. I believe that the defendant has failed to produce any evidence supporting three of the four elements of the assumption of the risk doctrine in its primary sense.
 
 
 19
 In addition, there is evidence in the record which tends to counter a finding of waiver or consent. The plaintiff and her husband did ask Les Cooper, owner of the defendant skating rink, about the safety of the rink in the absence of guardrails. They were told that the no-guardrail design was used for safety reasons. In light of this representation, I cannot say that all reasonable people would conclude that the combined hazard was so obvious that the plaintiff assumed the risk and that the defendant owed no duty to the plaintiff. Restatement (Second) of Torts Sec. 496D comment e (1965) ("The court may itself determine the issue only where reasonable [people] could not differ as to the conclusion.").
 
 
 20
 Because there is room for doubt on the questions of the plaintiff's knowledge and understanding and the reasonableness of her conduct, we should not disturb the jury's verdict. I would find that the district court did not err in denying the defendant's motion for a new trial on the basis of the assumption of the risk doctrine.
 
 III.
 
 21
 The defendant also argues that there was insufficient evidence to support the plaintiff's claim of a permanent injury and that the trial court erred when it informed the jury, in its instructions and on the verdict forms, of the legal bar to recovery where the plaintiff's contributory negligence exceeds fifty per cent. I find no merit in either contention and, therefore, would affirm the district court's entry of judgment in favor of the plaintiff.
 
 
 
 [1]
 Because we have found that the judgment for Smollett must be reversed, we do not need to reach the issues of whether the jury instructions were proper and whether Smollett suffered permanent injuries