### JOHN PETITTE, Plaintiff

v.

### BODKIN DEVELOPMENT CORP., and FAIRCHILD VIRGIN ISLANDS, INC. d/b/a DAVIS BEACH CO., EDWARD J. GERRITS, INC., Defendants

Civil No. 1986/17

District Court of the Virgin Islands

Div. of St. Croix

May 13, 1987

Nancy V. Young, Esq., and Lee J. Rohn, Esq. (Offices of Britain H. Bryant), St. Croix, V.I., *for plaintiff*

James L. Hymes, III, Esq., St. Thomas, V.I., *for defendant Davis Beach Co.*

Douglas Capdeville, Esq., and R. Eric Moore, Esq., St. Croix, V.I., *for defendant Gerrits, Inc.*

O'BRIEN, *Judge*

## MEMORANDUM AND ORDER

Did plaintiff John Petitte voluntarily assume the risk of his injuries when he operated his motorcycle on a dirt-biking expedition over dirt roads on defendants' construction site? We

conclude that he did, and we will enter judgment n.o.v. in favor of the defendants.

## I. FACTS

This matter came before the Court on trial by jury. The jury returned a verdict in favor of the plaintiff, John Petitte ("Petitte") in the amount of $250,000, and against the defendants, Edward J. Gerrits, Inc. ("Gerrits"), and the Davis Beach Co. ("Davis"). It found both Gerrits and Davis at fault for Petitte's injuries, and that Petitte was not contributorily negligent. The jury also found that he did not assume the risk of his injuries.

Gerrits and Davis bring these motions pursuant to Fed. R. Civ. P. 50(b). They argue that testimony at trial established Petitte's assumption of the risk as a matter of law. Before turning to the applicable law, we review the evidence presented at the March 30, 1987, trial, but because we are compelled to view the facts in the light most favorable to the plaintiff, we will recite them almost exclusively from the transcript of Petitte's testimony.

The plaintiff was a 31-year-old Ohio native who had taken up residence on St. Croix. College-educated, he had been riding motorcycles since he was fourteen years old. He was an experienced motorcyclist in both on and off the road travel. He had done extensive riding in the States on cross country trips. One of his favorite pastimes was dirt-biking, or cross country travel on a motorcycle with special tires.

These tires had large knobs on them to make it easy to grip the ground over which the biker traveled. They were not to be used on regular paved roads, but were designed to be driven over rough terrain like terrain usually encountered in dirt biking.

On December 28, 1985, Petitte had made arrangements to go cross country dirt biking with two male friends. He had taken his bike on a trailer to the home of one of those friends close to where the trip was to begin. The plan was to travel on dirt roads through the construction site on which the Carambola Beach Resort was being built up to the Scenic Road and then to Frederiksted.

The biking trio approached the construction site and noticed it was fenced off, with a gate. There was a security guard near the gate on Davis Bay Road, which led to the beach and the construction site. The guard reluctantly let them pass through when it was indicated they intended to travel up to the Scenic Road.

Petitte was last in line. As he traveled along the dirt road beyond the fence, he could see construction equipment, i.e., bulldozers and trucks. He could also see that debris had been gathered for collection, and there were small fires burning to destroy other waste or shrubs.

He told the jury that he knew that the area was a construction site, although he did not know the road itself was going to be under construction until he left the guard and entered the site. Leading up to the scene of the accident, the road has a slight curve to the left. There was heavy equipment parked along the side of the road which combined with the bush in that area to block Petitte's view.

He did not see a dirt mound, or embankment, until he came around the curve at a speed he estimated at twenty miles an hour or less. There he encountered an area where the contractor had bulldozed dirt to make a level spot across the road, and on one side of the level spot was a dirt embankment across the road. He estimated it to be three or four feet high.

Petitte slowed down and then decided to go over the mound. Knowing he was traveling at what he considered a safe speed, he told the jury that he did not consider the mound itself such an obstacle as to make him want to stop. As he said, he made the choice not to stop. Rather he decided to drive over it, because in his travels elsewhere he had encountered similar impediments of similar size and driven over them. Moreover, his two companions who had preceded him had already driven ahead over the same territory without incident.

Petitte drove up and over the mound. His front wheel became airborne for an estimated ten feet. He lost control of his motorcycle. About thirty feet away from the mound, after landing, his right leg came into glancing contact with the rear bumper of a pickup truck. The leg was broken. He testified that he had not seen this particular truck until he drove up and over the mound. He conceded he had seen other construction equipment along the road prior to the accident.

Petitte brought this action for damages. At trial, Gerrits and Davis maintained that they owed no duty to Petitte. They affirmatively defended on the basis that he assumed the risk of his own injuries and/or was contributorily negligent to the extent that

recovery is barred under Virgin Islands law.[1] The jury disagreed. We, in turn, disagree as a matter of law with the jury's finding.

## II. DISCUSSION

■■ The standard for granting a motion for judgment notwithstanding the verdict is the same as that for a directed verdict. Smollett v. Skayting Development Corp., 793 F.2d 547, 548 (3d Cir. 1986) (citation omitted). "We must determine whether 'as a matter of law' the record contains the minimum quantum amount of evidence from which a jury might reasonably afford relief." Id. See also Williams v. Martin Marietta Alumina, Inc., 817 F.2d 1030, No. 86-3003, slip. op. at 14 (3d Cir. April 29, 1987). In so doing, we do not judge credibility or weigh evidence; Laskaris v. Thornburgh, 733 F.2d 260, 264 (3d Cir.), cert. denied, 469 U.S. 886 (1984), rather, we decide only whether after giving the plaintiff every fair and reasonable inference, there was sufficient evidence upon which a jury could reasonably find for the plaintiff. Powell v. J. T. Posey Co., 766 F.2d 131, 133–34 (3d Cir. 1985) (citations omitted). In this context, we must decide whether the evidence could allow a reasonable jury to find that the plaintiff did not assume the risk of his injuries.

### A. *Assumption of the Risk Standard*

■ The adoption of the Virgin Islands Comparative Negligence Statute, 5 V.I.C. § 1451(a) (1978), has left the affirmative defense of assumption of the risk intact only in a severely limited, often called primary, sense. Keegan v. Anchor Inns, Inc., 606 F.2d 35, 39 n.5, 41 (3d Cir. 1979). Only where nonnegligent conduct constitutes implied or express waiver or consent,[2] is this defense available. Id. at 41. So long as fault can be attributed to the plaintiff, the defense overlaps with contributory negligence and is inappropriate. Smollett, supra at 548.

■ This affirmative defense requires the defendant to bear the burden of showing that the plaintiff knew of the risk, appreciated its character, voluntarily chose to confront the risk, and

---

[1] Under the Virgin Islands comparative negligence statute, 5 V.I.C. § 1451(a), a plaintiff may not recover damages if the trier of fact finds that the plaintiff was 51% at fault for his injuries. See Danbury v. Hess Oil Virgin Islands Corp., 18 V.I. 442, 450 (D.V.I. 1981).

[2] For an example of express waiver, see Shorter v. Drury, 695 P.2d 116 (Wash. 1985).

that such a choice was reasonable.[3] Smollett, supra at 748; Smith v. Seven Springs Farm, Inc., 716 F.2d 1002, 1009 (3d Cir. 1983) (applying same principles in context of Pennsylvania's Skiers Responsibility Act). It is an essentially subjective determination, ordinarily for the jury, in which the plaintiff's age, experience, intelligence and information are to be considered; and where his or her own words or conduct must make it clear that the risk was willingly accepted. Smith, supra at 1009 (citations omitted). Of course, where reasonable minds cannot differ, the court may rule as a matter of law. Id. If the defense is made out in its primary form, it negates any duty of care owed by the defendant, because the defendant's conduct is not considered the legal cause of the plaintiff's injuries. Id. at 1005 (citation omitted).

## B. *Assumption of the Risk Applied*

Petitte's own testimony makes it evident that he knew of and understood the risks inherent in dirt-biking on the construction site. His experience as an off-road biker, coupled with his knowledge that the earth moving equipment and trucks were parked on the road, establish these elements clearly.

Moreover, it cannot be said that Petitte's actions were anything but voluntary, and in light of his knowledge and experience, reasonable as well.[4]

Petitte can only argue that he was not cognizant of the truck which lay beyond the mound since he testified it was hidden from his view by the curve in the road, and other construction equipment. This fact, however, does not alter our finding, given that Petitte was aware that construction equipment and vehicles were on the road generally. See e.g., Smith, supra at 1009.[5]

---

[3] Neither the majority in Smollett nor Keegan discuss the reasonableness component. However, as Judge Mansmann points out in her dissent in Smollett, it is a necessary element. 793 F.2d at 550 (citations omitted). Apparently, it is this component which distinguishes the defenses of assumption of the risk in its primary and secondary forms. See, Smith, 716 F.2d at 1006.

[4] Conceptually, this reasonableness prong appears logical. In practice, however, its application is often difficult as evidenced by Judge Mansmann's dissent in Smollett.

[5] In Smith, the plaintiff testified in his deposition that he never saw the particular telephone pole he hit when skiing. 716 F.2d at 1004 n.2. The Third Circuit had no trouble finding that he was aware of the risks those poles imposed by virtue of his knowledge that such poles were a part of the ski run. Id. at 1009. Similarly here, Petitte was aware that the road was a construction site on which equipment and vehicles were located.

■ In light of all the foregoing, it is clear that Petitte knew of the risks he was facing, and appreciated the character of those risks. He voluntarily chose to confront those risks, and on the evidence, that choice was a reasonable one. The facts we recite are those most favorable to Petitte, and even on this basis, no reasonable jury could conclude otherwise.

## III. CONCLUSION

For the foregoing reasons, we grant the defendants' motion for judgment n.o.v. The plaintiff's complaint will be dismissed with prejudice.

## AMENDED JUDGMENT

THIS MATTER is before the Court on motion of the defendants for judgment n.o.v. Having filed a memorandum opinion of even date herewith, and the premises considered, now therefore it is

ORDERED and ADJUDGED:

THAT the defendants' motion for judgment n.o.v. is, hereby and the same, GRANTED; and

THAT the judgment in favor of the plaintiff dated April 3, 1987, is vacated; and

THAT the plaintiff's complaint is DISMISSED, WITH PREJUDICE.