**LENNOX CHELCHER, ET AL., Plaintiffs**

**v.**

**SPIDER STAGING CORP., Defendant**

Civil No. 91-107

District Court of the Virgin Islands

Div. of St. Croix

June 15,1995

ALLAN CHRISTIAN, Fredericksted, St. Croix, V.I., *for plaintiffs*

MARK MILLIGAN, Christiansted, St. Croix, V.I., *for defendants*

MOORE, *Chief Judge*

## MEMORANDUM

This matter is before the Court on the plaintiffs' motion for partial summary judgment, filed June 5, 1995, and the defendant's

motion for summary judgment, filed May 19, 1995. Having carefully reviewed the parties' submissions, the Court will deny plaintiffs' motion and grant the defendant's motion for the following reasons.

On May 17, 1989, plaintiff Lennox Chelcher worked at sandblasting the top hemisphere of a spherical propane tank belonging to Hess Oil Virgin Islands ("HOVIC") while employed by Industrial Maintenance Corporation ("IMC"). Working from movable, cage-like scaffold or "spider" allegedly manufactured by defendant Spider Staging Corporation ("Spider"), plaintiff Lennox Chelcher ("Chelcher") allegedly sustained permanently disabling damage to his lower back from approximately five hours of sandblasting in an uncomfortable position. The spider scaffold[1] had been mis-rigged on the day in question by HOVIC and/or Chelcher's employer, IMC, such that it did not hang plumb from its suspension wires, but rather dragged along the side of the spherical tank. This mis-rigging caused the floor-platform of the spider to tilt increasingly away from the horizontal as it progressed up the side of the tank. Having become fully aware of this situation, Chelcher nonetheless boarded the spider cage and sandblasted from its increasingly tilted platform for about five hours.

On October 17, 1994, the plaintiffs filed their third amended complaint in this action, alleging five redundant causes of action against Spider and Hess Oil Virgin Islands ("HOVIC").[2] As Count 1 asserts a cause of action against HOVIC, with whom plaintiffs

---

[1] In conformance with the parties' submissions, the word "spider" is used herein to denote the scaffold or hoist device used by Chelcher and manufactured by Spider.

[2] The Court notes that counsel for both parties have largely failed to present argument on the legal standards relevant to this case. Not only has this dereliction of professional duty impeded this Court's progress, but also, in certain extreme situations, forced the Court to extrapolate what counsel had in mind from the skeletal arguments presented. For example, the following represents the negligence Count alleged by plaintiffs in their third amended complaint:

> 23. Defendant SPIDER was negligent in both the design of the equipment, failure to warn, and the instructions or lack thereof that were provided with the equipment in that the equipment was not the type of equipment which should have been used for the job in question even though the defendant SPIDER indicated that it could be so used.

The factual inaccuracies and inadequacies in the complaint were not remedied in the least in later pleadings. Even the Joint Final Pre-Trial Order failed to elucidate plaintiffs' causal theory.

have already executed a settlement and stipulation of dismissal,[3] and Count 4 merely rehashes the causes of action alleged in the other counts, those two Counts will be dismissed. Count 5 alleges derivative causes of action, in the nature of loss of consortium, on behalf of Chelcher's wife and children. The RESTATEMENT (SECOND) OF TORTS § 693, which operates as the controlling law in this jurisdiction, approves such derivative actions on behalf of spouses.[4] By contrast, section 707A rejects such derivative actions on behalf of minor children. Thus, Count 5 survives only insofar as it alleges a loss of consortium claim on behalf of plaintiff Pamela Chelcher; the minor children have no cause of action.

All other aspects of the plaintiffs' complaint being dismissed herein, the instant summary judgment motions thus concern only Counts 2, 3, and 5 (insofar as Count 5 alleges a loss of consortium claim on behalf of Pamela Chelcher). Counts 2 and 3 allege causes of action against Spider in the nature of strict products liability and negligent failure to warn, respectively.

## STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). *Anderson and Celotex v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986), instruct that a summary judgement motion must be granted unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be a basis for a jury finding in that

---

[3] The Court has already denied the attempt of the minor plaintiffs, Chelcher's children, to void that settlement by Order dated June 6, 1995. Despite what appears to be clear evidence of HOVIC's substantial participation in the circumstances which allegedly resulted in Chelcher's claimed injuries, or possibly because of it, all plaintiffs settled with HOVIC on December 14, 1992 for $21,207.24.

[4] In the Virgin Islands, the various Restatements of the law provide rules of decision in the absence of local laws to the contrary. V.I. CODE ANN. TIT. 1, § 4 (1967); *Brandy v. Flamboyant Investment Co.*, 772 F. Supp. 1538, 26 V.I. 384 (D.V.I. 1991).

322

party's favor. *J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir. 1987).

For issues on which the movant would bear the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact. "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party . . . come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir. 1993) (citation omitted); *see, Anderson, supra,* at 249; *Petrucelli v. Bohringer and Ratzinger et al.,* 1995 WL 36526 (3d Cir. (Pa.) Feb. 1, 1995).

For issues on which the non-movant would bear the burden of proof at trial, the movant may simply "point[] out to the district court . . . that there is an absence of evidence to support the non-moving party's case." *Fitzpatrick, supra,* at 1116. Once the movant has done this, the non-movant must identify evidence of record sufficient to establish a genuine issue for trial with respect to every element essential to its claim or, as in this case, defense. Moreover, the mere existence of some evidence in support of the non-moving party will not be sufficient to withstand summary judgment; rather, there must be enough evidence to enable a jury reasonably to find for the non-moving party on the issue. *Witco Corp. v. Beekhuis,* 38 F.3d 682, 686 (3d Cir. 1994). The non-moving party "may not rest upon the mere allegations or denials of his [or her] pleadings, but his [or her] response . . . must set forth specific facts showing that there is a genuine issue for trial." *Lundy v. Adamar of New Jersey, Inc.,* 34 F.3d 1173, 1178 (3d Cir. 1994) (citing Gans v. Mundy, 762 F.2d 338, 341 (3d Cir.), *cert. denied,* 474 U.S. 1010, 88 L. Ed. 2d 467, 106 S. Ct. 537 (1985).

■ For the purpose of *strict liability,* the Court must determine if a genuine issue of fact exists regarding whether (1) Spider's product was manufactured in a defective condition (2) such that it was unreasonably dangerous to the user and whether it (3) was the factual and proximate (legal) cause of injury (4) without having been substantially changed from the condition in which it was sold. Additionally, the Court must consider whether a genuine issue of fact exists regarding Spider's claimed defenses to liability.

323

■ Regarding the *negligence claim*, the Court must determine whether a genuine issue of fact exists with respect to: (1) a duty of care owed to Chelcher, (2) a breach of that duty by Spider, which (3) was the factual and proximate (legal) cause of (4) damages to Chelcher.

## A. Count 2: Strict Products Liability

Plaintiffs argue that the scaffold manufactured by Spider was defectively designed insofar as neither the operator's manual nor an "SSFI/SIA"[5] warning label, directing all users to consult with their employers regarding the operator's manual, were permanently affixed to the spider.

Spider submitted documentary and affidavit evidence that a warning label was in fact affixed to the spider unit used by Chelcher when it left the factory, which is confirmed by such labels appearing on at least one of the scaffolds on the HOVIC worksite. *See,* Def. App. Ex. 15; Ex. 6; Ex. 16; Ex. 17. The evidence also shows that the warning labels on some of the Spider scaffolds on the HOVIC worksite had been painted over by the date of the injury. *Id.; see also,* Chelcher Dep. (No.2) 27-28. Plaintiffs' evidence to the contrary consists solely of Chelcher's somewhat hazy memory and photographs of an allegedly similar spider scaffold taken some three years after the date of injury. Thus, plaintiffs' evidence that the spider used by Chelcher bore no warnings, or that any lack of warnings was due to Spider rather than some subsequent actor, is weak and tenuous at best.

For the purpose of its summary judgment motion, defendant has put forward a number of arguments which will be considered in light (1) of the lack of evidence to prove the elements of plaintiffs' claim and (2) of defendant's evidence in support of its affirmative defense that Chelcher assumed the risk of his injuries.

---

[5] The Court notes with some dismay that neither party has clearly explained what authority created, required, or recommended the "SSFI/SSI" warning label. Presumably, it has to do with Spider's alleged failure to abide by the Underwriters Laboratories Standards for safety. Even if this allegation is true, it does not force the conclusion that their product was defective under section 402A of the RESTATEMENT (SECOND) OF CONTRACTS. Conformance or non-conformance to industry standards is not dispositive of the issue of defective products.

## 1. Absence of Evidence to Support Claim

Regarding the first and second elements, manufacture of the spider in a defective condition due to failure to warn, which defect rendered it unreasonably dangerous to its user, the Court can only express its doubt about the sufficiency of plaintiffs' evidence. The operator's manual produced by Spider to accompany its product warns of dangers in the nature of falling off or getting entangled in the supporting cables and wires which might accompany the misuse of its product. Plaintiffs assert that a failure to attach the manual to the spider-hoist itself was a product defect that could have rendered it unreasonably dangerous to its user.

The third and crucial element of a strict liability claim is causation. The first prong of causation plaintiffs must prove is whether the alleged product defect, a failure to affix an instruction manual to the scaffold, was a cause-in-fact of Chelcher's injuries. *Murray v. Fairbanks Morse*, 610 F.2d 149, 160 (3d Cir. 1979). Strict liability premised upon a failure to warn requires the plaintiff to show that proper warnings would have prompted safe behavior. *See, Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 492 (1985). Plaintiffs' argument in this regard rests upon the hypothetical assertion that the sight of a pictogram depicting a man falling off a scaffold would have prompted Chelcher to ask his employers to read to him from the instruction manual. Plaintiffs' theory must be that this information would have prevented the injury by giving Chelcher information that would have caused him not to begin or to continue sandblasting.[6]

The Court's difficulty with plaintiffs' proposition is that it is hard to conceive how Chelcher's injuries would have been prevented even if the alleged defect had been remedied by providing the warnings plaintiffs claim were not attached. In other words, for a jury to conclude that the spider in question in fact caused Chelcher's injuries, it would first have to assume that an alternative "design," i.e., the availability on the spider of warnings and instructions, would have caused Chelcher to act differently. In order to submit the question of cause-in-fact to the jury in a failure to warn strict liability case, the Court must first determine that

---

[6] As discussed in note 1 above, the imprecision of plaintiffs' formulation of the issues has forced the Court to interpolate causal theories where plaintiffs have offered none.

there is sufficient evidence to support a reasonable inference that an adequate warning would have prevented injury.[7]

Chelcher had worked on similar, if not identical scaffolds, for approximately three years before he proceeded to sandblast the tank from the spider on the morning May 17, 1989. In these circumstances, the Court can find no credible evidence that Spider's alleged failure to warn could have caused Chelcher's injury. First, plaintiffs' claim that a pictogram depicting a man falling from a scaffold would have caused him to request access to information in the owner's manual is highly speculative. Second, the assertion that Chelcher would have acted differently that morning, upon seeing a pictogram, is belied by the fact that he proceeded to sandblast on the day of his injury despite the absence of the job-site safety inspector and despite the obvious mis-rigging of the spider. Third, plaintiffs have presented no credible evidence from which reasonable jurors could conclude that information in the safety manual would have prevented Chelcher's injury; although the manual admonishes users to keep the spider vertical to avoid accidents, it does not warn that back strain is a likely consequence of prolonged use of a leaning spider.

The second prong of the causation element is whether the alleged defect, Spider's failure to warn or affix an instruction manual to the spider cage, was the proximate or legal cause of Chelcher's injuries.[8] Spider's conduct is a proximate, or legal, "cause of harm to another if . . . [its] conduct is a substantial factor in bringing about the harm." RESTATEMENT (SECOND) OF TORTS § 431(A). Even if we had found Spider's conduct to have been a factual (but for) cause of the harm, we would find that plaintiffs failed to show it was a proximate cause of Chelcher's injuries. The use of the phrase "substantial" in the Restatement and the case law

---

[7] *See, e.g., Conti v. Ford Motor Co.*, 743 F.2d 195 (3d Cir. 1984) ("Where the theory of liability is failure to warn adequately, the evidence must be such as to support a reasonable inference, rather than a guess, that the existence of an adequate warning may have prevented the accident before the issue of causation may be submitted to a jury."); *see also, Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481 (3d Cir. 1985); *Powell v. J.T. Posey, Co.*, 766 F.2d 131 (3d Cir. 1985).

[8] Proximate causation is a necessary element in proving a tort case under theories of both strict liability and negligence, RESTATEMENT (SECOND) OF TORTS § 431, cmt. e. Thus, a decision by the Court that Spider's alleged failure was not the proximate cause of Chelcher's injuries serves to bar both claims.

demonstrates that there is no litmus test for causation; rather, proximate causation, and hence liability, "hinges on principles of responsibility, not physics." *Van Buskirk*, 760 F.2d at 492; RESTATE-MENT (SECOND) OF TORTS § 431, CMT. A.

Section 433(a) of the Restatement directs a court to consider "the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it." Section 434 notes that a determination of proximate causation properly lies within the province of the court when, as here, reasonable minds cannot differ. Weighing all the evidence put forth by both parties and accepting *arguendo* plaintiffs' factual allegations regarding Spider's failure to warn, the Court finds that said failure could not have been a substantial factor in bringing about Chelcher's injuries. HOVIC's and IMC's mis-rigging of the scaffold,[9] their failure to supervise the worksite, and their request that Chelcher proceed in his sandblasting, and his ready acquiescence despite the absence of the safety inspector, were all substantial contributing factors in causing his injury. The combined effect of these contributing factors had such a predominant impact and so diluted Spider's contribution, if any, as to prevent it from being a substantial factor in producing the harm to Chelcher. As no reasonable jury could conclude that Spider's alleged failure to warn was the proximate cause of Chelcher's back pain, Spider is not liable in tort to plaintiffs.

Regarding the fourth element of the 402A claim, plaintiffs have not shown that the spider was in substantially the same condition on the date of injury as on the date it was sold.[10] Their expert engineer's report confirms that his conclusions are based solely upon photographs of a spider which plaintiffs allege to be the same as other spiders in IMC's possession on the date of the injury. Plaintiffs' App. Ex. J. These photographs, taken in August of 1992,

---

[9] Spider manufactured and sold in May of 1989 an appropriate rigging device for the job to which Chelcher was assigned. *See, generally,* Def.'s App. Ex. 8.

[10] Spider contends, and the Court agrees, that plaintiffs have not clearly identified the actual scaffold Chelcher was using when he got injured in 1989. Viewing together all of the parties' submissions on the issue of product identification, however, the Court concludes that a jury might reasonably find in plaintiffs' favor on the question whether a Spider product, similar to the one photographed by plaintiffs' expert, was used by Chelcher on May 17, 1989.

some three years after the date of the injury, can not represent the condition of the scaffold used by Chelcher in May of 1989, nor are they probative of the question whether the spider was in substantially the same condition on the date of injury as on the date it was sold. Accordingly, no evidence has been presented that would allow reasonable jurors to conclude that the scaffold in question was substantially unaltered, on May 17, 1989, from the condition in which it was sold,[11] and plaintiffs have failed to carry their burden regarding the fourth element of their 402A claim.

Fortunately, the Court need not, and does not, rely solely on the weakness of plaintiffs' evidentiary showing to grant summary judgment in favor of the defendant. As discussed below, Chelcher clearly assumed the risk of continuing to sandblast while in pain, thereby consenting to the consequences of that activity.

## 2. Defenses to Liability

Spider asserts two affirmative defenses which deserve the Court's attention, assumption of the risk and lack of proximate cause. We have already found lack of proximate cause in discussing the elements of plaintiffs' 402A claim. The availability of the assumption of risk defense to action under section 402A may seem a bit murky in the aftermath of the adoption in V.I. CODE ANN. tit. 5, § 1451, of the Virgin Islands "Comparative Damages" statute.

### a. Assumption of Risk

We start with the recognition under the Restatement that

the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under [section 402A] as in other cases of strict liability. If the user . . . discovers the defect and is aware

---

[11] Plaintiffs' expert infers that no warning label was attached to the scaffold in question on May 17, 1989 because pictures taken in August of 1992 do not reveal one. This conclusion is directly contradicted by the affidavits of Spider's lead mechanic and Vice President which attest that each spider scaffold sold in 1988 bore a warning label. Def.'s App. Ex. 16-17. The conclusion is also contradicted somewhat by the photographs attached to the report of defendant's expert engineer which clearly depict at least two different labels admonishing scaffold users to consult the operator's manual and receive training before use. *Id.* Ex. 15.

of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery.

RESTATEMENT (SECOND) OF TORTS, § 402A, cmt. n; *accord* § 524(2). Since the Restatements of Law are the law in the Virgin Islands unless local statute or decision is to the contrary,[12] we now look to see if the above gloss on section 402A has been modified by legislative or court decision.

In a case arising not long after enactment of our Comparative Damages statute, 5 V.I.C. § 1451, a plaintiff injured instantly by a latent defect of a product brought suit under section 402A. Affirming on appeal, the United States Court of Appeals for the Third Circuit qualified this Court's dicta[13] seeming to apply the comparative principles of section 1451 to the Restatement's assumption of risk principles:

> Although the elimination of assumption of risk as a complete bar to recovery may be consistent with a proper allocation of the loss in strict liability cases, we need not consider the contours of the assumption of risk defense because there is no evidence in this case that Murray in any way voluntarily proceeded to encounter a known defect.

*Murray,* 610 F.2d at 162.

■ Distinguishable from the instant facts, an injury caused by an obvious condition taking place over five hours, the *Murray* case does not foreclose the assumption of risk defense in 402A cases. The instant case thus provides an opportunity to address the "contours of the assumption of risk defense" as they relate to section 402A. We would agree that "when conduct amounts to a voluntary waiver or consent the absolute bar to recovery should remain" available to a defendant in a section 402A strict liability

---

[12] *See,* n. 3, *supra.*

[13] This Court broadly stated that "both plaintiff's want of ordinary due care in his use of the product and plaintiff's unreasonable exposure to a known and appreciable risk of injury should work to diminish plaintiff's recovery in a § 402A type action in proportion to the amount of causative culpable conduct attributable to the plaintiff." *Murray v. Beloit Power Systems, Inc.,* 450 F. Supp. 1145, 1147 (D.V.I. 1978), *aff'd sub nom., Murray v. Fairbanks Morse,* 610 F.2d 149 (3d Cir. 1979).

action. *Keegan v. Anchor Inns, Inc.*, 606 F.2d 35, 40 (3d Cir. 1979).[14] We find this analysis especially appropriate in the products liability arena to preserve the bar to recovery against a plaintiff who "discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it," thereby releasing a manufacturer from the consequences of otherwise tortious conduct.

The Court must then decide whether plaintiff Lennox Chelcher's conduct on May 17, 1989 can be fairly characterized as negligent (and thereby not barred, *id.*) or whether it alternatively provides the Court a basis to infer consent or waiver. Chelcher had worked on the same equipment without incident for a number of years before the day he sustained his injuries. Chelcher Dep. at 20. When Chelcher began sandblasting from the scaffold on the morning of May 17, 1989, he felt an immediate strain and pain in his lower back, according to plaintiffs caused by the recoil force of the sandblasting hose and Chelcher's stance on the tilted spider scaffold. Despite this pain, he continued working on the platform for a significant amount of time, somewhere between four and five hours. Plaintiffs' App. Ex. I. Plaintiffs' medical expert concluded that Chelcher's "present condition is the result of his having worked in an awkward and unphysiological [sic] *position maintained for a period long enough to cause him harm to his back.*" Plaintiffs' App. Ex. G. (emphasis added). Plaintiffs' other medical expert concluded that his condition was "not uncommon in an individual . . . doing the type of work that he was doing *for the extended period of time* that he was doing it." Plaintiffs' App. Ex. I.

■ The evidence incontrovertibly establishes that Chelcher's injury was caused, not in an instant (as in the Murray case), but rather over the course of five hours' voluntary exertion. Since Chelcher has admitted that he first felt pain when he began blasting, the Court concludes that the danger of continuing to work in such an uncomfortable position then became known and

---

[14] The Keegan analysis was recently endorsed and applied to RESTATEMENT (SECOND) OF TORTS § 343A, in *Monk v. Virgin Islands Water and Power Authority et al.*, No. 94-7372, 1995 WL 231637, (3d Cir. April 20, 1995); *see also, Smollett v. Skayting Development Corp.*, 793 F.2d 547 (3d Cir. 1986).

obvious to him, and that by thereafter continuing to blast, he unreasonably assumed the risk of further injury. Chelcher's willingness to continue working for five hours after becoming aware of the pain can only be deemed an expression of consent to the consequences or, alternatively, a waiver of Spider's liability for any dangers allegedly caused by its product. Accordingly, this case falls properly within the ambit of the doctrine which allows a plaintiff's voluntary encounter of a known and obvious risk to bar a tortfeasor's liability.

## B. Count 3: Negligent Failure to Warn

The Court's finding that Spider's alleged negligence was neither a cause-in-fact nor proximate cause of Chelcher's injuries precludes liability under both strict liability and negligence theories. Even in the absence of that finding, however, the plaintiffs' negligence claim would be dismissed for failure to offer sufficient evidence on the essential elements of breach and causation as well as on the grounds of assumption of risk.

Plaintiffs must identify evidence of record sufficient to establish a genuine issue for trial with respect to every element essential to its negligence claim. Plaintiffs must show that Spider had a duty to warn Chelcher of the danger of using its product in a tilted position, that Spider breached that duty, that Spider's breach caused Chelcher's injuries, and that Chelcher in fact suffered injuries proximately as a result of Spider's breach. Moreover, the mere existence of some evidence in support of plaintiffs' case will not be sufficient to withstand summary judgment; rather, there must be enough evidence to enable a jury reasonably to find for plaintiffs on the issue. *Witco Corp. v. Beekhuis*, 38 F.3d 682, 686 (3d Cir. 1994).

As noted above, plaintiffs have failed to provide the necessary quantum of evidence to support a reasonable jury's finding that Spider's alleged breach of its duty was a cause-in-fact or proximate (legal) cause of Chelcher's injuries, although plaintiffs have provided marginally sufficient evidence for a jury to conclude that the spider used by Chelcher bore no warnings.

The assumption of risk analysis set forth above applies with equal force to a negligence claim. *See, Keegan*, 606 F.2d at 40. The

331

Court has determined that Chelcher's knowing and voluntary conduct on May 17, 1989 amounted to a consent or waiver to any negligent action which might be imputed to Spider. Assumption of risk in this "primary" sense has not been foreclosed in negligence actions by 5 V.I.C. § 1451. *Id.* at 41. Accordingly, summary judgment also will be granted in favor of defendant with respect to Count 3, plaintiffs' negligence claim.

## C. Count 5: Loss of Consortium

As Pamela Chelcher's consortium claim derives solely from the claims of her husband, Lennox Chelcher, it will also be denied.

### CONCLUSION

For the foregoing reasons, neither Chelcher nor his wife may succeed in an action against the manufacturer of the spider scaffold. An order granting summary judgment in favor of Spider is attached.[15]

ENTERED this 15th day of June, 1995.

### ORDER

For the reasons set forth in the attached Memorandum, it is hereby

ORDERED that plaintiffs' motion for partial summary judgment is DENIED. It is further

ORDERED that defendant's motion for summary judgment is GRANTED and this case is accordingly CLOSED.

ENTERED this 15th day of June, 1995.

---

[15] In arriving at this decision, we have considered neither the supplemental appendix filed by the defendant on June 9, 1995 nor plaintiffs' response thereto.