

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-6-2007

# Con Way Transp Ser v. Regscan Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2262

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Con Way Transp Ser v. Regscan Inc" (2007). *2007 Decisions*. Paper 805.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/805

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Case Nos. 06-2262 and 06-2384
_____

CON-WAY TRANSPORTATION SERVICES, INC.,

Appellant No. 06-2262

v.

REGSCAN, INC.
_____

CON-WAY TRANSPORTATION SERVICES, INC.

v.

REGSCAN, INC.,

Appellant No. 06-2384

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 03-cv-00374)
District Judge: Honorable John E. Jones, III
_____

Argued May 7, 2007

Before:  RENDELL, JORDAN, HARDIMAN, Circuit Judges

(Filed July 6, 2007  )
_____

J. David Smith     **[ARGUED]**
McCormick Law Firm
835 West Fourth Street
Williamsport, PA  17701
*Counsel for Appellant/Cross-Appellee*
  *Con-Way Transportation Services, Inc.*

Daniel F. Schranghamer     **[ARGUED]**
Allen E. Ertel & Associates
800 West Fourth Street
Williamsport, PA  17701
*Counsel for Appellee/Cross-Appellant*
  *RegScan, Inc.*

_____

## OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

This case presents an attack on a jury verdict in a breach of contract case.  The jury was presented with breach of contract claims relating to three computer products and found in favor of Plaintiff Con-Way Transportation Services, Inc. ("Con-Way") on one of them, "HazMat Manager/Loader."  Con-Way now appeals the jury determination with regard to a second program, "HazMat Trucking Enforcer," arguing that it was logically inconsistent for the jury to find for it on HazMat Manager/Loader but not HazMat Trucking Enforcer.  Con-Way also argues that the jury was improperly directed by the District Court to decide a question of law.  For the reasons described below, on this issue and on all other issues raised on appeal we will affirm the Order of the District Court.

2

FACTUAL AND PROCEDURAL HISTORY

Con-Way is a trucking company that moves hazardous materials. A Con-Way employee designed a computer program called "HazCalc" which was intended to organize internally Con-Way's movement of hazardous materials. In 1999, Con-Way representatives met with representatives of RegScan, Inc. ("RegScan") to discuss the possibility of developing HazCalc into a commercial product. RegScan has experience in the production of regulatory software, as well as its marketing and sales. In a written agreement dated May 3, 2000, Con-Way and RegScan agreed on a licensing arrangement ("the Agreement" or "the Licensing Agreement."). The Agreement sought to use HazCalc as a springboard to develop a "Product" (as it was described in the agreement) marketable for use in the trucking industry. RegScan would develop HazCalc into a marketable product or products and Con-Way would receive 32% of the gross sales of any "commercial implementation" of HazCalc. App. 51a.

RegScan viewed HazCalc before the agreement was signed. There was conflicting testimony about how useful HazCalc was to the RegScan software developers who worked with it with the aim of developing commercially available products, but the parties agree that three items were subsequently developed by RegScan and the connection between those three items and HazCalc was the basis for the claim of breach

3

of contract brought by Con-Way.  The three items were HazMat Manager/ Loader,[1]

HazMat Enforcer, and HazMat Green Screen.  HazMat Green Screen was a mainframe

system and not a software program like HazMat Enforcer and HazMat Manager.[2]

(Con-Way has not appealed the jury's verdict that HazMat Green Screen is not covered

by the agreement.)

In 2001, RegScan began selling HazMat Manager/Loader.  RegScan made two

royalty payments to Con-Way in the total amount of $3,420.00 before RegScan

discontinued, alleging that the Agreement was no longer binding.  Con-Way brought suit

in federal court, alleging breach of contract.[3]  The jury trial lasted from December 6-7,

2005.  RegScan argued that none of the programs was derived from HazCalc.

---

[1]HazMat Manager/Loader was referred to at some points as HazMat Manager and HazMat Loader.  As the District Court charged the jury, "You will recall that during the testimony, HazMat Loader and HazMat Manager were referred to interchangeably.  So although there are still three, you will consider that HazMat Loader and HazMat Manager really refer to one of the three, and then there is HazMat Trucking Enforcer and HazMat Green Screen.  So just by way of clarification there are three, HazMat Loader and HazMat Manager used interchangeably, that's one; HazMat Trucking Enforcer and HazMat Green Screen."  App. 141a.

[2]According to Thomas Balaban, RegScan Vice President, Green Screen was designed to run "on a large mainframe computer as opposed to a PC.  It was something that we were not aware of when we started the application, was that all the major trucking companies had not gone the PC route.  That was a surprise to us.  They were in – all using mainframes, if you remember the old days if you've ever seen some of the computers of 20 years ago that had green lettering on a black screen, no graphics, just strictly – that's the green screen, that's where the term comes from." App. 112a.

[3]A state court proceeding was brought by RegScan regarding the validity of the contract but it is of limited relevance to the instant appeal.

RegScan argued at trial that when it received HazCalc it found it to be, in the words of one witness (Wilcox) "a rather incompetent program," that was "incomprehensible and totally useless for developing new software." App. 95a. He said that the hope was that it could be used to create new software but "it never happened. It just – we could not figure that thing out." 95a. Asked if his team started from scratch when it began the HazMat Loader project, Wilcox answered: "Basically." App. 96a. Asked if they used anything from HazCalc in designing HazMat Loader, Wilcox answered: "No, no." App. 96a.

RegScan also contended that HazMat Trucking Enforcer was not a "Product" covered by the Licensing Agreement because it was not a commercial implementation of HazCalc. It pointed to the unique needs of law enforcement (who had to be aware of more labels on trucks than any single truck company); the fact that the program included roughly three times the functionality of HazMat Manager in light of additional features and information included; the fact that it could link violations to specific regulations; and the fact that it could upload violations into a government database.[4]

---

[4]Specific testimony was put forward to this effect, from a variety of witnesses. *See, e.g.*, App. 118-19a (Lang Direct) (testifying that Trucking Enforcer has three times the functionality of Manager/Loader and does not contain anything from HazCalc); App. 116a (Shanahan Direct) (testifying that Trucking Enforcer does not use anything from HazCalc); App. 110a (Balaban Direct) (testifying that Trucking Enforcer was not developed from HazCalc); App. 101-102a (Ertel Direct) (testifying that Trucking Enforcer's purposes are distinct from those of Manager/Loader).

At the charging conference, the issue was raised about how to separate out the different programs for the jury. The following conversation occurred:

> **[Counsel for RegScan]**: . . . . [T]here are three distinct products that are at issue here, HazMat Loader/Manager, HazMat Trucking Enforcer, and HazMat Manager Green Screen. And I think there's been a fair amount of testimony about the differences between those. And I think the jury can find or could find that HazMat Loader was a product, but Trucking Enforcer and Green Screen were not.
> **The Court**: No question they could, and I don't disagree with that.
> **[Counsel for Con-Way]**: And it's covered in the charge, Your Honor.

App. 122a.

The District Court's jury charge included the following:

> To review then, you may find that none of the software are products under the Licensing Agreement, or you may find that one of the three, two of the three, or that all of the three of the software are subject to the Licensing Agreement.

App. 136a.

The jury rendered its verdict on December 8, 2005. The verdict sheet showed that the jury found for Con-Way only with regard to royalties on HazMat Manager/Loader. The jury found no breach of contract with regard to HazMat Trucking Enforcer or HazMat Green Screen. The Court entered a judgment on the jury verdict in the amount of $36,100.64. This amounted to 32% of the gross sales of HazMat Manager/Loader, minus the amount already paid to Con-Way by RegScan.[5]

---

[5]The District Court subsequently entered an amended judgment in the amount of $43,685.64 to account for omitted HazMat Manager/Loader sales and prejudgment interest.

6

Prior to the verdict being rendered, Con-Way orally moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. The Court denied the oral motion, and after the verdict the motion was renewed pursuant to Rule 50(b) and was briefed by the parties, along with a motion by Con-Way for a new trial on the issue of damages pursuant to Rule 59 of the Federal Rules of Civil Procedure.

The District Court held that "a reasonable jury could easily have concluded that HazMat Trucking Enforcer was not a 'Product' pursuant to the Agreement." App. 10a. The Court examined Con-Way's arguments and found that they essentially amounted to disputes as to what the evidence showed, but that the jury had credited RegScan's version of the facts. It held that the jury had "more than the 'minimum quantum' of evidence upon which it could render the judgment that it did. To rule otherwise would clearly be an impermissible substitution of [my] judgment in place of that of the jury." App. 11a (quoting *Keith v. Truck Stops Corp.*, 909 F.2d 743, 745 (3d Cir. 1990)).[6]

---

[6]The District Court denied the request for a new trial on damages based on similar reasons. Con-Way also put forward an argument that the District Court erred by submitting a legal question to the jury for determination. The Court wrote in denying this argument:

> [Con-Way] submits that reading the Agreement together with the 'scope of work' documents unequivocally proves that HazMat Manager/Loader was a 'Product' under the Agreement, and therefore as a logical conclusion HazMat Trucking Enforcer was also a 'Product' subject to the Agreement. Further, [Con-Way] argues that no reasonable juror could have determined that HazMat Trucking Enforcer was not derived from HazMat Manager/ Loader.
> First, [I] note that a plain reading of the Agreement clearly indicates

7

Con-Way timely appealed both the Rule 50(b) denial and the Rule 59 denial.

DISCUSSION

We have jurisdiction pursuant to 28 U.S.C. § 1291 and the District Court had jurisdiction pursuant to 28 U.S.C. § 1332.[7] "Our review of the district court's denial of a Rule 50(b) motion is plenary." *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 249 (3d Cir. 2001). Judgment notwithstanding the verdict "may be granted under Fed. R. Civ. P. 50(b) 'only if, as a matter of law, the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief.'" *Id.*

that its terms are vague as they relate to the matters in dispute, at best. To be sure, [I] do not believe it was the intent of either party to create a contractual document that contained ambiguous terms. Despite the efforts and negotiations of the parties, however, the resulting Agreement was not unambiguous. In the face of this unclarity, factual questions arose that were properly submitted to the jury for resolution.

App. 9a.

[7]Defendant RegScan puts forward a cross-appeal in which it contends that the District Court decision lacked subject matter jurisdiction because this diversity case lacked the requisite amount in controversy under 28 U.S.C. § 1332. It is clear that the complaint met the requirements of § 1332. The parties agree that the entire amount that could come due to Con-Way exceeded $75,000. As the District Court held when this challenge was raised before it, RegScan initially disclaimed the validity of the contract in its answer (as it had in a previous state-court action against Con-Way), and thus the entire value of the payments was the correct amount with which to calculate the amount in controversy. *See Dardovitch v. Haltzman*, 190 F.3d 125, 135 (3d Cir. 1999) ("Where a plaintiff brings a suit for payment of money as part of an ongoing and continually accruing obligation, such as an installment contract, the amount in controversy is generally limited to the amount then due and owing, even if a judgment would have collateral estoppel effects on liability for future payments. Where, by contrast, a suit is brought to establish directly the right to receive any payments because the putative defendant has repudiated that right entirely, and not just with respect to current payments, the amount in controversy is the entire amount that may ever come due.") (citation omitted).

(quoting *Powell v. J.T. Posey Co.*, 766 F.2d 131, 133-34 (3d Cir. 1985)).  With regard to the request for a new trial on damages, we review the denial of a new trial motion for abuse of discretion.  *Waldorf v. Shuta*, 142 F.3d 601, 621 (3d Cir. 1998).  We give RegScan the "benefit of all logical inferences that could be drawn from the evidence presented, resolv[ing] all conflicts in the evidence in [its] favor and, in general, view[ing] the record in the light most favorable to [it]." *Williamson v. Conrail*, 926 F.2d 1344, 1348 (3d Cir. 1991).

Con-Way's sufficiency of the evidence argument boils down to whether one should view HazMat Trucking Enforcer as part of an inviolable chain (HazCalc – HazMat Manager/Loader – HazMat Trucking Enforcer) as Con-Way asserts, or as a distinct application that came to exist after RegScan found HazCalc to be of very little use, and after it sought to create a new application with different uses and purposes for a different customer.  As the District Court wrote, the jury heard two days of testimony as to the unique purpose and function of HazMat Trucking Enforcer.  At least four different witnesses, *see* n.4 *supra*, testified that HazMat Trucking Enforcer was not a commercial implementation of HazCalc–the two had different purposes, functions, coding, scope, and customers.  The jury simply credited RegScan's witnesses with respect to HazMat Trucking Enforcer but not with respect to HazMat Manager/Loader.  This is a legally available disposition of the case.  There was no objection at the time of the jury charge to the notion that the jury could find for Con-Way on one product and not the other, and the

9

judge's charge was patterned on what Con-Way submitted. It is clear that the verdict with respect to HazMat Trucking Enforcer was one at which a reasonable jury could arrive.

As to the question of whether the District Court improperly gave the jury the task of determining a legal issue, Con-Way faces the same problem. The alleged defects in the jury charge were not objected to at the time of the charge, and we agree with the District Court that the jury was not asked to decide a question of law here but, rather, to apply the contract as written to the facts as they found them.

CONCLUSION

For the reasons set forth above, we will AFFIRM the decision of the District Court denying Con-Way's motions for relief pursuant to Rules 50 and 59, and we will DENY RegScan's cross-appeal.

_____